STATE OF HAWAII, Plaintiff-Appellee, *v.* WAYNE LEANU RABE, Defendant-Appellant, and GUERNALDO CAMINOS, Defendant

NO. 8744

(CRIMINAL NO. 56063)

AUGUST 2, 1984

BURNS, C. J., HEEN AND TANAKA, JJ.

252

OPINION OF THE COURT BY BURNS, C. J.

A jury found defendant-appellant Wayne Rabe (Rabe) guilty of conspiracy to promote prison contraband in the second degree in violation of Hawaii Revised Statutes (HRS) §§ 705-520[1] and 710-1023(1)(b).[2]

---

[1] Section 705-520 provides:
*Criminal conspiracy.*   A person is guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a crime:
   (1) He agrees with one or more persons that they or one or more of them will engage in or solicit the conduct or will cause or solicit the result specified by the definition of the offense; and
   (2) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

[2] Section 710-1023(1)(b) provides:
*Promoting prison contraband in the second degree.*   (1) A person commits the offense of promoting prison contraband in the second degree if: * * *
   (b) Being a person confined in a correctional or detention facility, he intentionally makes, obtains, or possesses known contraband.

Rabe argues that his following rights have been violated:

I. His right under Rule 608(a), Hawaii Rules of Evidence, HRS Chapter 626 (effective January 1, 1981) (HRE),[3] as a witness whose truthful character has been attacked to present evidence in the form of opinion or reputation of his truthful character.

II. His right as a defendant under Rule 404(a)(1),[4] HRE, to present evidence of pertinent traits of his character.

III. His state and federal constitutional rights to compulsory process for obtaining witnesses in his favor. Amendment VI, United States Constitution; art. 1, sec. 14, Hawaii Constitution.

We disagree and affirm.

Adult Corrections Officer (ACO) Hai McKinney (McKinney), who at the time of the alleged offense was a prison guard at Oahu Community Correctional Center (OCCC), testified in summary as follows: On November 4, 1980 Rabe, then an inmate at OCCC, approached McKinney and asked him whether he would like to make some big money by bringing dope into the prison. McKinney's response was noncommital. He consulted with his supervisor, Sergeant Drake, who advised McKinney to play along with Rabe. Later that same day Rabe told McKinney to meet "Caminos" at a certain time and place and "Caminos" would give McKinney the "stuff" to bring into prison. Guernaldo Caminos (Caminos) was an

---

[3] Rule 608 provides:
*Evidence of character and conduct of witness.* (a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
(1) The evidence may refer only to character for truthfulness or untruthfulness, and
(2) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

[4] Rule 404(a)(1) provides:
*Character evidence not admissible to prove conduct; exceptions; other crimes.* (a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same[.]

inmate allowed to leave prison every day to work but required to return to prison at night. The next morning, at the designated time and place, Caminos gave McKinney 27.1 grams of marijuana and told him, "Just give it to Wayne and then you get big bundles money." Without Caminos's knowledge, the exchange was viewed by OCCC employees Lieutenant Ignacio, Sergeant Sniffen, and Officer Flores. Caminos was later arrested by police. When McKinney went back to work, he was threatened by Rabe and other inmates. Because of the pressure and threats, he quit his job within a month and thereafter became a Maui County policeman.

Rabe contradicted McKinney. He testified that on November 4, 1980 McKinney told him that he could make big money with dope and asked him if he was interested. However, the matter never went any further. Rabe denied ever talking to Caminos about bringing contraband into prison.

Caminos also contradicted McKinney. He testified that he had never talked to McKinney or Rabe about bringing drugs into the prison. He merely delivered the marijuana to McKinney under duress applied by inmates other than Rabe whom he did not identify. He denied telling McKinney that the marijuana was for Rabe. On the contrary, when he delivered the marijuana, McKinney asked him where the money was and he responded that he did not know anything about any money.

Officer Flores testified over the State's objection that he had never seen Rabe high or on drugs at the prison.

Rabe testified without objection, contradiction, or impeachment that he had never messed with dope, that he never had any kind of bad conduct report from the prison, and as follows:

A. Before I came over to the main population, I was a landscaper supervisor that took care of the whole, entire common facility of Keehi Annex. I was highly respected by the officers, staff members of the administration as well as inmates for one basic reason, I was a man to keep to myself, to do as told to do. I was never involved in any type of a riot, any type of drugs, misconduct, whatsoever. For my length of stay through my entire prison term, which I fulfilled now for three years, at no such time I've received any warnings or suspicion. I've never been set aside for any kind of suspicion whatsoever, drugs, misconduct towards staff or fellow inmates.

Both Rabe and Caminos were indicted for conspiracy to promote prison contraband. At a joint trial the jury convicted Rabe and acquitted Caminos.

### DEFENDANT'S OFFERS OF PROOF

In this appeal, Rabe argues that his constitutional and statutory rights to present evidence in his favor were violated when he was not permitted to introduce the following evidence:

1. Rabe's attempt to call Henry Waiau as a witness was denied. Rabe's offer of proof was as follows:

MR. WONG: Your Honor, Mr. Waiau is going to testify that he's a housing supervisor over at OCCC, that he knows Wayne Rabe and he's familiar with his reputation, got an opinion as to his reputation, that he's had constant contact with Rabe and that he knows not only about him but he knows what other people think of him, that he has never seen him high or intoxicated, that he talks to him very often, that he knows that ACO's know him, and that he gets along with him, that he's heard other ACO's discuss Mr. Rabe, that he's heard other inmates talk about him, that he's heard them discuss Mr. Rabe and they say that they get along with him, that the staff members know about him, the workers know him, they get along with him.

As a result, Mr. Waiau has come to be familiar with Mr. Rabe, his reputation, that he's trustworthy, responsible, useful, reliable, just a good worker, free from drug use or any connection with drugs, stays out of trouble, is honest, reliable; that he's sufficiently acquainted with Mr. Rabe to testify to these and other matters, that he has a good attitude and that Mr. Rabe's reputation in the prison is that he's a good prisoner; that, in his opinion, Mr. Rabe would not be attempting to smuggle in any kind of marijuana or contraband, that he has not heard any complaints about him, that Mr. Rabe is a decent person. Oh, your Honor, there's a whole lot more, but I think that it's pertinent under the rule of evidence to come in.

\* \* \* \* \*

THE COURT: What pertinent traits?

MR. WONG: What I just told you, your Honor, all of those traits are pertinent, trustworthiness, responsibility. And, by the way, your Honor, he's always working, he works many, many hours. He's reliable, has a good attitude, his truthfulness, integrity, getting along with other workers, free from drug use — Oh, by the way, that question has already come in before the jury. We're entitled to ask more on it. And, your Honor, that's circumstantial evidence. He was not involved in any kind of promoting of prison contraband.

\* \* \* \* \*

I also want Mr. Waiau to testify to prison life, as to how drugs get into prison, what kind of problems they have with drugs, the threats, why an officer would be threatened, why other fellow officers would be threatened.

\* \* \* \* \*

The evidence of defendant's reputation in the community in which he lives and works has long been recognized as being admissible, but only where the witness is thoroughly familiar with the general consensus of the relevant community. We submit that Mr. Waiau falls within that and we would offer to prove that he'll testify to matters which will so indicate that he's thoroughly familiar with Mr. Rabe and he's thoroughly familiar with other people who deal with him, both the corrections officers and inmates.

\* \* \* \* \*

I would have Mr. Waiau testify to a number of other matters as well regarding the prison conditions and regarding bringing contraband into prison. His testimony would be that he has been at the prison for eight years. He has seen that there are some adult corrections officers who are corrupt and abuse their positions. Some ACO's are suspected of bringing in contraband; that when an ACO brings in contraband, he gets a cut; that the cut can be as much as a couple of hundred dollars, depending on what's brought in. Friends or relatives will often use ACO's as a means of getting contraband into prison; that some of the ACO's are threatened because they are participating in bringing in con-

traband; it makes the life of the straight ACO's more difficult. And it's bad enough to try to supervise prisoners when they are sober, but when they're high on drugs or have weapons, it's much worse, and that's why ACO's might be threatened.

There's a tremendous amount of prison contraband in the prison; that if an ACO is under suspicion for bringing in contraband, he's likely to quit. He'll testify that in the numerous contacts he's had with Mr. Rabe, he's never seen him high; that he didn't realize that Mr. Rabe was being brought to trial for this incident concerning the marijuana and that he thinks that it is nonsense, that Mr. Rabe is being truthful when he says he did not make any kind of agreement to bring in the contraband. He does not believe that Mr. Rabe would be involved in any way in any kind of conspiracy to bring in contraband into the prison. He's not that kind of person; that he knows many of the other ACO's and prison administrators and how the administrators feel about Mr. Rabe, and he believes that most of them trust him very much and that he's a responsible person who's not involved in any way in any kind of drugs in prison. He thinks, in this case, the ACO who's saying that Mr. Rabe conspired to bring contraband into prison is either lying or mistaken.

2. Rabe's attempt to call Chester Drake, an OCCC watch supervisor, as a witness was denied. The substance of what Drake's testimony would have been was contained in a letter dated January 12, 1981 which Drake had written to a judge who was about to sentence Rabe in another case. In relevant part his letter states:

Your Honor, for over the past months, which is fifteen (15) months to be exact, that Mr. Rabe has been here, he has shown other Staff Members, Resident-Inmates, as well as myself that he is a reasonable and Trust-worthy person as well as he finding it in himself.

Mr. Rabe has done quite alot for other inmates as well as Staff Members and the entire Facility. Such as comforting and Humbling Inmates which under pressure and giving advise to their Benefit. He is also the Landscape and Maintenance-person since February of 1980., and since

Wayne Rabe has kept the Entire Compound very clean and very respectible looking he has beautified the Visiting Yard area with Flowers which he himself has planted also in the Main Yard. He has also done some Construction Projects with dealth with concrete. This Project consisted on making two (2) Walk-way Slabs that leads from the Parking lot area to the front gate of this Facility. While on this Project, Mr. Rabe has shown that he could be trusted and also be a leader as well as a good worker by having two other Resident-Inmates work with him being that they were working without an A.C.O. being present at times. Mr. Rabe has not posed at any time a threat to our Security and he could be trusted by not only me but to the rest of my Staff.

\*     \*     \*     \*     \*

Your Honor, this man has given alot of respect to others and has gotten alot in return, not just from Resident-Inmates but also from our Staff persons here. Since Mr. Rabe has not received a bad report from us. And when asked by Staff Members and Resident-Inmates about Mr. Rabe conduct and attitude, the reply was indeeded very respectable and was also given very high regards and compliments for all that he has done for this Facility.

\*     \*     \*     \*     \*

(Spelling and grammatical errors in original.)

3. Rabe's attempt to have the following exhibits introduced into evidence was denied.

Exhibit C — Prison work evaluation report dated March 10, 1982.

Exhibit D — Prison conduct evaluation report dated March 21, 1982.

Exhibit E — Prison conduct evaluation letter dated March 21, 1982.

Exhibit F — Prison work evaluation report dated March 21, 1982.

Exhibit G — Prison conduct evaluation report dated August 27, 1981.

Exhibit H — Prison conduct evaluation report dated August 24, 1981.

Exhibit I — Prison conduct evaluation report, undated.

Exhibit J — Prison conduct evaluation report dated August 15, 1981.

Exhibit K — Prison commendation letter dated December 31, 1980.

Exhibit L — Letter dated December 17, 1980 verifying that Rabe is acceptable for the Teen Challenge program.

Exhibit M — Intake Service Center evaluation dated January 12, 1981.

As to these exhibits, his offer of proof was as follows:

MR. WONG: Your Honor, they go to whether Mr. Rabe was obeying prison rules and regulations. He's charged with violating prison rules by conspiring to bring in contraband. We have ample evidence, which we have provided you, which shows that he was obeying the rules. You know, we would offer to bring in the witnesses to testify that they've seen him performing, working 19 hours a day. He's involved in all of these activities. He's going to school, how can he be involved in drugs? I think that they [sic] jury is entitled to at least hear that. That's not going to be conclusive by any means, but that is circumstantial evidence as to whether he committed the act charged.

There's been testimony that supports these letters and recommendations and evaluations, which are directly pertinent to the time period charged. It's pertinent to the traits of his trustworthiness, of his reliability, his responsibility, his dealing with other guards and inmates.

4. Rabe's attempt to call OCCC staff member Wayson Tanoue as his witness was denied. Rabe's offer of proof was as follows:

MR. WONG: * * * Mr. Tanoue, who we listed on our witness sheet, will so testify that he has also known Mr. Rabe; that Mr. Rabe works at least 16 hours a day under him; that he sees Mr. Rabe for at least eight to ten hours of those, and this would be at least five days a week; that although Mr. Rabe works seven days a week, he's never seen Mr. Rabe lie; that he's never had any trouble with Mr. Rabe; that he's never heard that anybody has had complaints about him; that he's familiar with Mr. Rabe and Mr. Rabe's reputation

in prison, both at the time of the incident and afterwards; that he can support, he would come out and affirmatively speak on behalf of his judgment and Mr. Rabe's credibility and his character, speak on every aspect of his character, including those which would be relevant in this case.

I.

### DEFENDANT'S RIGHT UNDER RULE 608(a)(2), HRE, TO PRESENT OPINION AND REPUTATION EVIDENCE OF HIS CHARACTER FOR TRUTHFULNESS

Prior to the Hawaii Rules of Evidence, an accused who testified did not have to wait until his character for truthfulness was attacked before introducing evidence of his character for truthfulness. Thus, in *State v. Rivera,* a case decided prior to the Hawaii Rules of Evidence, the Hawaii Supreme Court stated, "Appellant having testified on his own behalf, placed his credibility in issue." 62 Haw. 120 at 127, 612 P.2d 526 at 531 (1980).

Under Rule 608(a)(2), HRE, however, evidence of a witness's character for truthfulness may be offered "only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Furthermore, mere contradiction of a witness's version of the facts does not constitute such an attack. *United States v. Danehy,* 680 F.2d 1311 (11th Cir. 1982); *United States v. Angelini,* 678 F.2d 380, 382, n. 1 (1st Cir. 1982); 10 Moore's Federal Practice ¶ 608.12 (2nd ed. 1982); Rule 608, HRE, commentary at 46 (1981). *But see* 3 Weinstein's Evidence § 608[08] (1982). Here, the only reflection by the prosecution on Rabe's character for truthfulness was by mere contradiction.

It has generally been stated that the standard of review of the trial judge's decision to exclude evidence in a criminal case is the abuse of discretion standard. *State v. Nakamura,* 65 Haw. 74, 80, 648 P.2d 183, 187 (1982); *United States v. Davis,* 546 F.2d 583 (5th Cir. 1977).

Under the abuse of discretion standard of review, the trial court may not be reversed by an appellate court unless the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party

litigant. *Alt v. Krueger*, 4 Haw. App. 201, 663 P.2d 1078 (1983). Under that standard different trial judges may, on the same facts, arrive at opposite rulings without any of them being reversible on appeal.

We disagree with the application of the abuse of discretion standard of review to the trial court's exclusion of evidence under Rule 608(a).

Rule 608(a) imposes precise limitations. It states specifically who may introduce what evidence and when. Each set of facts has only one correct answer. In our view, appellate review of the trial court's exclusion of evidence under Rule 608(a) involves six questions relating to Rules 103,[5] 403,[6] 405,[7] and 608, HRE. Those six questions are:

    1. Was the substance of the evidence made known to the court by an offer of proof or was it apparent from the context

---

[5] Rule 103 provides in relevant part:

    *Rulings on evidence.*   (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

\*    \*    \*    \*    \*

    (2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

\*    \*    \*    \*    \*

    (d) *Plain error.* Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

[6] Rule 403 provides:

    *Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[7] Rule 405 provides:

    *Methods of proving character.*   (a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

    (b) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim or defense proof may also be made of specific instances of his conduct.

within which the questions were asked? Rule 103(a)(2).

2. If the answer to question 1 is no, was the error, if any, plain error? Rule 103(d).

3. If the answer to questions 1 or 2 is yes, was the trial court right or wrong under Rule 608(a)?

4. If the answer to question 3 is that the trial court was wrong, was the trial court right or wrong under Rule 405(a)?

5. If the answer to question 4 is that the trial court was wrong, did the trial court abuse its discretion under Rule 403?

6. If the answer to question 5 is yes, did the exclusion affect a substantial right of the defendant? Rule 103(a).

Here, the answer to question 1 is yes. The defendant made direct offers of proof. The answer to question 3 is that the trial judge was right. Consequently, we affirm the exclusion of the evidence without answering the other four questions.

## II.

### DEFENDANT'S RIGHT TO PRESENT PERTINENT CHARACTER TRAITS UNDER RULE 404(a)(1), HRE

Rule 404(a)(1), HRE, permits the defendant in a criminal case to introduce "evidence of a pertinent trait of his character."

As we interpret Rabe's offers of proof he offered evidence of the following character traits: reliability, dependability, diligence, amiability, reasonableness, decency, honesty, truthfulness, law-abidingness in prison, and abstinence from drugs and alcohol.[8]

In our view, appellate review of the exclusion of evidence under Rule 404(a)(1) involves the same six questions noted previously with respect to Rule 608(a) except that as to question 3, Rule 404(a)(1) is substituted for Rule 608(a).

Here, the answer to question 1 is yes.

The answer to question 3 is that the trial judge was right as to all but one of the traits Rabe offered to prove.

---

[8] In his opening brief Rabe contends that he should have been allowed to introduce evidence of his nonviolent nature. Since the record indicates no such offer of proof, the contention is without merit.

Notwithstanding the choice of a different word, the prevailing view is that the word "pertinent" as used in Rule 404(a)(1) is generally synonymous with the word "relevant", which is defined in Rule 401 as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Angelini,* 678 F.2d 380 (1st Cir. 1982); *United States v. Hewitt,* 634 F.2d 277 (5th Cir. 1981).

In *State v. Faafiti,* 54 Haw. 637, 642, 513 P.2d 697, 701 (1973), our supreme court stated: "Defendant has a clear right to introduce evidence of personal character traits associated with the basic nature of the offense with which he is charged."

The commentary to Rule 404 states, "Examples would be character for peacefulness and non-violence in an assault case and character for honesty in a theft prosecution."

Consequently, we hold that the traits of reliability, dependability, diligence, amiability, reasonableness, decency, honesty, truthfulness, and abstinence from alcohol are not pertinent to the crime of conspiracy to promote prison contraband (in the form of marijuana) in the second degree. That leaves only the traits of law-abidingness and abstinence from drugs.

The defendant's law-abidingness is a character trait pertinent to all crimes. *United States v. Angelini, supra;* 1A Wigmore, *Evidence* § 59, nn. 1, 2 (Tillers rev. 1983).

Rabe offered to prove that law-abidingness while in prison was a trait of his character. The offer, however, related to Rabe's time in prison from October 1979 to the trial on March 22, 1982. Since the offer was made under Rule 404(a)(1) and was not limited to evidence relating to Rabe's time in prison prior to November 4 and 5, 1980, the dates of the alleged offense, it violated the rule stated in *State v. Rivera* "that reputation evidence cannot relate to a time subsequent to the commission of the offense." 62 Haw. 120 at 127, 612 P.2d 526 at 531 (1980) (citations omitted).

A trial court does not err when it refuses an offer of proof of combined admissible and inadmissible evidence. *State v. Howard,* 49 Or. App. 391, 619 P.2d 943 (1980). Thus, the trial court did not err in excluding the evidence.

That leaves the trait of abstinence from drugs. As to that trait, we move to question 4.

In his offer of proof, Rabe's counsel indicated that Mr. Waiau "was familiar with [Rabe's] reputation" and had "an opinion as to [Rabe's] reputation" and then stated that Mr. Waiau had "never seen [Rabe] high or intoxicated." We infer that Rabe's counsel thereby offered to prove Rabe's character trait of abstinence from drugs.

Here again, all of the offers of proof related to witnesses whose knowledge of Rabe was acquired during his time in prison prior to the trial, i.e., from October 1979 to March 1982. The offer was not limited to their knowledge of Rabe or his reputation prior to November 5, 1980, the date of the alleged offense. Thus, the answer to question 4 is that the trial judge was right.

Assuming the trial court should have allowed testimony as to reputation or in the form of opinion as to Rabe's character trait of abstinence from drugs limited to the time prior to November 5, 1980, we move to question 5 as to that offered testimony.

The standard of review of the exclusion of evidence under Rule 403 is the abuse of discretion standard. *See State v. Chong*, 3 Haw. App. 246, 252, 648 P.2d 1112, 1117 (1982).

We conclude that the trial court did not abuse its discretion for two reasons. First, the excluded evidence was of limited relevance to the issues in the case. Second, both Officer Flores and Rabe testified without contradiction or impeachment as to Rabe's non-involvement with drugs. Consequently, evidence of Rabe's character trait of abstinence as to drugs would have been merely cumulative and a waste of time. Rule 403, HRE.

In light of the above, the answer to question 6 is no. The error, if any, was harmless.

### III.

### CONSTITUTIONAL RIGHT TO COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS FAVOR

The right to compulsory process affords a defendant the power to compel the attendance of witnesses and the right to have those witnesses heard. *State v. Commendador*, 67 Haw. ____, 680 P.2d 253 (1984). The narrow view that the right to compulsory process goes only to procuring the attendance of witnesses at trial, and does not

go to their competence to testify, was rightly rejected in *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, compulsory process "does not guarantee the right to compel attendance and testimony of all potential witnesses absolutely." *State v. Mitake,* 64 Haw. 217, 224, 638 P.2d 324, 329 (1981) (footnote omitted). Unless the witness denied to the defendant could have produced testimony both material and favorable to the defense, there is no constitutional violation. *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

In our view, a defendant's state and federal constitutional rights to compulsory process with respect to his right to present evidence of his truthful character, of other traits of his character, or of his character in general are no greater than his right under the current Hawaii Rules of Evidence to present such evidence. Since Rules 608(a) and 404(a)(1), HRE, have not been violated, Rabe's constitutional rights to compulsory process likewise have not been violated.

Affirmed.

*Michael J. Y. Wong* for defendant-appellant.

*Peter Van Name Esser, (Maurice Arrisagado* on the brief), Deputy Prosecuting Attorneys, for plaintiff-appellee.