STATE of Iowa, Appellee,

v.

Isidro MARTINEZ, Appellant.

No. 02–1278.

Supreme Court of Iowa.

May 12, 2004.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Gary Kendell, County Attorney, and Ryan Ellis, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Isidro Martinez, was convicted of delivery of a controlled substance (methamphetamine) and failure to affix a drug tax stamp. On appeal, he contends the trial court erred in instructing the jury with respect to the jury's use of evidence of the defendant's character and reputation for honesty, trustworthiness, and dependability. Although defense counsel requested an instruction allowing this evidence to be used as direct evidence of the defendant's innocence, the court in-

formed the jury instead that testimony concerning the defendant's character and reputation for truthfulness could be considered only on the issue of the defendant's credibility. Martinez also raises three claims of ineffective assistance of counsel.

Upon our review of the record and the parties' arguments, we find no error in the trial court's refusal to give the defendant's requested instruction on the jury's use of character evidence. Because the record is inadequate to allow us to determine Martinez's ineffective-assistance claims on appeal, we preserve these matters for a possible postconviction relief action. In light of our conclusions, we affirm the defendant's convictions and sentences.

## I. *Background Facts and Proceedings.*

In the fall of 2001 Terry Banker agreed to cooperate with the police in exchange for the dismissal of pending drug charges against him. He told the authorities that the defendant, Isidro Martinez, had agreed to sell him "an ounce and a teener"—an ounce and seven grams—of methamphetamine for $1200, $1000 now and $200 later. The police made arrangements for a controlled drug buy between Banker and the defendant on the evening of November 2.

After the police determined Banker had no drugs on his person or in his vehicle, they gave Banker $1000 in cash, having previously recorded the serial numbers of the bills. With the police present, Banker telephoned Martinez and arranged to meet him at a convenience store so Martinez could follow Banker to the gravel road where the drug buy would take place.

Banker was kept under surveillance as he drove to the convenience store and from there to the gravel road. Once on the gravel road, Banker and Martinez pulled their vehicles onto the shoulder and Martinez got into Banker's car. After a few minutes, Martinez exited Banker's vehicle, at which time the police arrested both men.

After informing Martinez that he was under arrest for delivering methamphetamine, a law enforcement officer gave the defendant his *Miranda* rights. The officer then asked Martinez some general information, i.e., where he lived and what he was doing out there. According to the officer, Martinez did not really answer these questions. A search of the defendant uncovered over $700 in cash, in addition to the $1000 controlled buy money.

The authorities' search of Banker's vehicle revealed two plastic bags of a substance later identified as methamphetamine, in an amount consistent with the order placed by Banker. A drug dog searched Martinez's car and indicated some areas around the glove box where drugs had possibly been located. In addition, an area under the hood of the defendant's car appeared to have been modified and, at some point, used to conceal drugs.

Martinez was charged with delivery of a controlled substance, more than five grams of methamphetamine, in violation of Iowa Code section 124.401(1)(*b*)(7) (2001), and failure to affix a tax stamp, in violation of Iowa Code sections 453B.3 and 453B.12. At trial Banker and the police officers involved in the controlled buy testified, in general, to the information set forth above.

In his defense, Martinez called three witnesses, his wife, his boss, and a co-worker, who testified without objection concerning the defendant's character and reputation. Martinez's wife testified that she "believe[d] him to be an honest person and basically straightforward ... very open about everything." She said that on the evening of his arrest, her husband talked to her about the possibility of get-

ting a loan from his boss at the concrete company where Martinez worked.

Martinez's boss, David McCrory, testified and described Martinez as honest and trustworthy. McCrory stated that Banker, who also worked for McCrory, was not dependable and had a reputation in the community for not being truthful or honest. McCrory recalled that on the day of Martinez's arrest, Martinez had approached him about a loan to buy a truck, but McCrory denied loaning Martinez any money.

Sandra Tijerina, the former officer manager at the concrete company, also testified on the defendant's behalf. She said Martinez had a reputation in the community for honesty and truthfulness. She testified he was always at work, arrived on time, worked as long as he needed to work, and was helpful.

The defendant took the stand and denied ever selling methamphetamine to Banker. He claimed Banker called him on the night in question to meet and have a drink. Martinez said he bought some beer at the convenience store and then followed Banker. The defendant claimed that once he got into Banker's car, Banker asked Martinez to keep some money for him because Banker did not want his wife to find out about it. According to Martinez, Banker said he was having marital problems.

Martinez claimed that when he was arrested he told the police that he was there to have some drinks with a friend. He admitted he did not tell the officers that Banker had asked Martinez to hold cash for Banker. The defendant denied ever selling drugs or modifying his car so that drugs could be concealed in it.

The jury found the defendant guilty of both charges. After sentencing, Martinez filed this appeal.

## II. *Character and Reputation Instruction.*

The defendant asked the trial court to instruct the jury that it could consider evidence of the defendant's character and reputation for truthfulness in determining whether a person of such character and reputation would be likely to commit the crimes charged. *See* Iowa R. Evid. 5.404(*a*)(1) (permitting evidence "of a pertinent trait of the defendant's character" for the purpose of proving the defendant acted in conformity with this trait at the time of the offense). Instead, the court instructed the jury that it could consider evidence about the defendant's and Banker's characters and reputations for truthfulness "only in deciding whether to believe the testimony of these witnesses, and how much weight to give it." *See* Iowa Rs. Evid. 5.607, 5.608 (permitting evidence of character for truthfulness or untruthfulness to attack or support the credibility of a witness). *See generally People v. Miller,* 890 P.2d 84, 94–96 (Colo.1995) (discussing the differences between admitting evidence under rule 404(*a*)(1) and rule 608(*a*)). Martinez claims on appeal that the trial court erred in failing to give his requested instruction because Martinez's honesty was a central issue in the case.

We review the trial court's refusal to give a requested instruction for correction of errors at law. *Lynch v. Saddler,* 656 N.W.2d 104, 107 (Iowa 2003). "As long as a requested instruction correctly states the law, has application to the case, and is not stated elsewhere in the instructions, the court must give the requested instruction." *State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996). When we apply these principles to the facts presented, we conclude the court did not err because the requested instruction is not applicable to this case.

■ Generally, evidence regarding the accused's character and reputation is not admissible to demonstrate the likelihood that the accused committed the charged offense. *See* Iowa R. Evid. 5.404(*a*); 7 James A. Adams and Joseph P. Weeg, *Iowa Practice: Evidence* § 5.404.2, at 186 (2003) [hereinafter *"Iowa Practice: Evidence"*]. An exception is recognized, however, where the defendant offers evidence "of a *pertinent* trait of the [accused's] character." Iowa R. Evid. 5.404(*a*)(1) (emphasis added); *see Miller*, 890 P.2d at 91. A character trait is "pertinent" if it is particularly "involved in the crime alleged." *State v. Hobbs*, 172 N.W.2d 268, 271 (Iowa 1969); *accord Iowa Practice: Evidence* § 5.404.2, at 186; *see also State v. Brown*, 592 A.2d 163, 164–65 (Me.1991) ("A trait is pertinent if the existence or nonexistence of the trait would be involved in the commission or noncommission of the particular crime charged ... even if the trait of character is not an essential element in the case."); *State v. Bogle*, 324 N.C. 190, 376 S.E.2d 745, 751 (1989) ("In criminal cases, in order to be admissible as a 'pertinent' trait of character, the trait must *bear a special relationship to* or *be involved in* the crime charged."). As one writer has stated, "the trait of character offered by the defendant should be closely or strongly related to the criminal behavior in issue." H. Richard Uviller, *Evidence of Character to Prove Conduct: Illusion, Illogic and Injustice in the Courtroom*, 130 U. Pa. L.Rev. 845, 853 (1982) [hereinafter "Uviller Article"].

■ Whether the *trait is pertinent* is a question different from whether the *evidence is relevant*. As this court has noted, one reason "[a] specific rule is required in order to exclude [character] evidence [is] because it otherwise qualifies for admission under general relevancy standards."

*See State v. Barrett*, 401 N.W.2d 184, 187 (Iowa 1987); *accord* 1 John W. Strong, *McCormick on Evidence* § 186, at 649 (5th ed. 1999) ("Evidence of the general character of a party or witness almost always has some probative value ...."), § 188, at 654 ("evidence that an individual is the kind of person who behaves in certain ways almost always has some value as circumstantial evidence of how this individual acted ... in the matter in question"), § 190, at 658–59 (noting that while evidence of bad character "would not be irrelevant" in a criminal case, "the dangers of prejudice, confusion and time-consumption outweigh the probative value" of such evidence) [hereinafter *"McCormick on Evidence"*]. Thus, the evidence falling within the exception found in rule 4.404(*a*)(1) is subjected to a more exacting standard than merely showing its relevancy to the defendant's general propensity to commit a crime. Rather, the trait itself must directly relate to a particular element or facet of the crime charged. *See Stitt v. State*, 102 S.W.3d 845, 849 (Tex.Ct.App. 2003) ("A pertinent character trait is 'one that relates to a trait involved in the offense charged or a defense raised.'"); *McCormick on Evidence* § 191, at 673 (stating "pertinent traits" are "those involved in the offense charged"); Uviller Article, 130 U. Pa. L.Rev. at 853 (stating the relevancy of a particular trait "is found in the assessment that its establishment makes less likely the occurrence of the specific item of behavior attributed to the defendant").

Our prior cases illustrate this requirement. For example, in *Hobbs*, the defendant was charged with aggravated robbery. 172 N.W.2d at 270. We held the traits implicated in a robbery charge were "honesty, integrity, and good citizenship," while the aggravation aspect of the crime concerned "the specific traits of peacefulness and nonviolence." *Id.* at 271; *see*

*also Iowa Practice: Evidence* § 5.404.2, at 186 (stating "in an assault case, the accused can introduce his character trait of peacefulness"). In a later case, *State v. Kramer,* 231 N.W.2d 874, 876–77 (Iowa 1975), we considered the admissibility of testimony of the defendant's "good" character where the defendant was accused of breaking and entering. We affirmed the trial court's refusal to give a proposed instruction that this testimony could be used as direct evidence of the defendant's innocence, noting "the testimony did not relate to the particular character traits involved in the crime charged." *Kramer,* 231 N.W.2d at 877 (citing *Hobbs,* 172 N.W.2d at 271).

■ The question raised in this case, then, is whether the character traits to which the defendant's witnesses testified without objection—honesty, trustworthiness, and dependability—are pertinent to the crimes of delivery of methamphetamine and failure to affix a tax stamp. Although our court has not faced this precise issue, a few other courts have considered the admissibility of character evidence as substantive proof that the defendant was innocent or guilty of similar crimes. *See United States v. Jackson,* 588 F.2d 1046, 1055 (5th Cir.1979); *Miller,* 890 P.2d at 91–96; *State v. Rabe,* 5 Haw.App. 251, 687 P.2d 554, 562–63 (Haw.Ct.App.1984).

In *Jackson,* the defendant was charged with conspiracy to distribute heroin and possession of heroin with the intent to distribute. 588 F.2d at 1048. The appellate court held the trial court properly excluded evidence of the defendant's reputation for truth and veracity because these traits were not pertinent to the crimes charged. *Id.* at 1055. In *Miller,* the defendant was charged with possession and distribution of cocaine. 890 P.2d at 86. The court held the defendant's "character

for truthfulness was not a trait 'pertinent' to his drug offense." *Id.* at 96. Finally, in *Rabe,* the defendant, charged with conspiracy to distribute marijuana in prison, offered proof of numerous character traits that he claimed should be admitted under rule 404(*a*)(1). 687 P.2d at 562. The Hawaii court of appeals held "that the traits of reliability, dependability, diligence, amiability, reasonableness, decency, honesty, truthfulness, and abstinence from alcohol [were] not pertinent to the crime of conspiracy to promote prison contraband (in the form of marijuana)." *Id.*

We reach the same conclusion as these courts in our consideration of whether the witnesses' testimony in this case concerning the defendant's traits of honesty, trustworthiness, and dependability is evidence of "pertinent traits" so as to constitute direct proof of the defendant's innocence. These traits are not strongly related to the criminal behavior at issue here—the delivery of methamphetamine and the failure to affix a drug tax stamp. Therefore, the trial court did not err in refusing to instruct the jury that it could consider this testimony as substantive evidence of Martinez's commission or noncommission of the charged offenses. *See Kramer,* 231 N.W.2d at 877 (holding trial court correctly refused requested instruction on legal effect of character evidence because "the testimony did not relate to the particular character traits involved in the crime charged").

### III. *Ineffective–Assistance–of–Counsel Claims.*

■ In order to prevail on a claim of ineffective assistance of counsel, the defendant must prove "(1) counsel failed to perform an essential duty; and (2) this failure resulted in prejudice." *State v. Westeen,* 591 N.W.2d 203, 207 (Iowa 1999). Although such claims are generally reserved

for postconviction relief actions, we will resolve them on a direct appeal of the criminal conviction in two situations:

> If the record on appeal shows ... that the defendant cannot prevail on such a claim as a matter of law, we will "affirm the defendant's conviction without preserving the ineffective-assistance-of-counsel claims." Conversely, if the record on appeal establishes both elements of an ineffective-assistance claim and an evidentiary hearing would not alter this conclusion, we will reverse the defendant's conviction and remand for a new trial.

*State v. Graves,* 668 N.W.2d 860, 869 (Iowa 2003) (citations omitted).

■ We turn now to the three bases upon which the defendant rests his claim of ineffective representation. The defendant claims his counsel should have objected to testimony elicited by the prosecutor that improperly commented on the defendant's right to remain silent. *See Doyle v. Ohio,* 426 U.S. 610, 611, 96 S.Ct. 2240, 2241, 49 L.Ed.2d 91, 94 (1976) (holding prosecutor's cross-examination of defendant with respect to defendant's failure to tell exculpatory story after receiving *Miranda* warnings at time of arrest was an improper "use of the defendant's post-arrest silence" in violation of due process). Martinez also contends his counsel failed to advise him that, as a Mexican national, he had a right to confer with the Mexican Consulate. *See Ledezma v. State,* 626 N.W.2d 134, 152 (Iowa 2001) (holding defense counsel should advise defendant of right to consular access). Finally, the defendant alleges his attorney should have objected to the State's improper presentation of evidence concerning the absence of tax stamps during a witness's redirect examination.

We conclude the record before us is not adequate to resolve the defendant's claims on direct appeal. The State and Martinez's trial attorney should be given the opportunity to address these matters in an evidentiary hearing. Thus, the defendant's ineffective-assistance-of-counsel claims must be preserved for a possible postconviction relief action.

Finding no basis for reversal, we affirm.

**AFFIRMED.**