# IN THE COURT OF APPEALS OF IOWA

No. 13-1670
Filed February 25, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ATIBA SPELLMAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Dale E. Ruigh, Judge.


        Atiba Spellman appeals from his convictions for two counts of first-degree murder. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, Stephen Holmes, County Attorney, and Mary Howell Sirna and Timothy Meals, Assistant County Attorneys, for appellee.


        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, P.J.**

Atiba Spellman appeals from his convictions for two counts of first-degree murder. He asserts the district court erred in excluding evidence of the victim's character—specifically, her alleged prior violent behavior. He also argues his due process rights were violated because he was denied a fair trial when the court excluded this evidence. With regard to Spellman's constitutional argument, he failed to preserve error. Furthermore, we conclude the court properly excluded this evidence, given it was not pertinent to Spellman's heat-of-passion defense and was otherwise inadmissible under Iowa Rule of Evidence 5.404. Consequently, we affirm Spellman's convictions.

**I. Factual and Procedural Background**

At trial, the jury could have found the following facts.[1] On December 6, 2008, Spellman killed Shakena Varnell (also known as Amy) and Michael Odikra by stabbing them several times with a knife. Amy was Spellman's common law wife, and they had been a couple for approximately eight years. She had two children from a previous relationship, and the children viewed Spellman as their stepfather. Amy was having an affair with Odikra. Evidence at trial indicated Spellman knew, or at least strongly suspected, that the affair was going on several months prior to the night of the murders. This evidence includes the testimony of various people who stated Spellman told them he thought Odikra and Amy were having an affair and that he wanted to harm Odikra.

---

[1] At trial Spellman did not contest the fact he killed the victims, and therefore, the majority of these facts are undisputed.

At 6:30 p.m. on December 5, Spellman called Amy's uncle, David Varnell, and told David that Odikra and Amy were having an affair. At 9:00 p.m. Spellman picked up Amy's son at the movies. They drove to Odikra's residence, and Spellman told the boy to look under the garage door to confirm Amy's car was there. They then waited outside the residence for approximately three hours, and around midnight, Spellman drove Amy's son home. Phone records revealed Spellman called Amy's phone approximately forty-one times that night. He also called several people in an attempt to contact Amy, and these witnesses testified Spellman seemed very agitated. When Amy called her son's phone Spellman spoke with her and told her to "stop playing these games."

Phone records further revealed that at approximately 12:30 a.m., Spellman called his supervisor at the Ames Tribune to report that he would not be able to deliver the morning paper due to car trouble and that he had broken down in Waterloo. At 2:07 a.m., Spellman spoke with an old friend, Levarn Davis, and said he was driving to Waterloo. Davis then tried to reach Amy because he was afraid for Amy's safety, but he got no answer. The records showed Spellman was not truthful about his location and that he was actually in Ames.

At approximately 2:15 a.m., Odikra's body was discovered outside Amy's residence, and Amy was found inside the apartment door. Both were unclothed. Blood from the two victims and Spellman was found in the residence. Additionally, there were signs of forced entry—the door had been dead bolted shut but had been forced open, resulting in several splinters from the door frame throughout the entryway. An autopsy showed Amy had a total of thirteen stab

wounds as well as blunt force trauma, and Odikra had seven stab wounds, defensive wounds, and blunt force trauma.

A warrant was issued for Spellman's arrest. At 10:30 a.m. on December 6, Spellman called David, and David informed Spellman the victims were dead. At 11:30 a.m., Spellman called Davis and said that he was in Des Moines. Davis gave Spellman a phone number for the authorities and told him he should call. On December 7, Spellman called Special Agent Don Schnitker, who informed him warrants had been issued. Spellman stated he was in Des Moines and would turn himself in the following day; however, he never arrived at the police station.

Phone records indicated Spellman was traveling around the central and south eastern parts of United States during these two days, and on December 8, he was in Raleigh, North Carolina. Iowa authorities contacted the police in Wayne County, North Carolina and requested they be on the lookout for Spellman's car. The morning of December 8, Spellman was apprehended by state police in Wayne County and transported back to Iowa. After searching his car, authorities discovered blood of both Amy and Odikra. It also appeared the floor board had been scrubbed clean.

On December 29, 2008, Spellman was charged with two counts of murder in the first degree, in violation of Iowa Code sections 707.1 and .2 (2007). A jury trial was held, and while Spellman admitted he killed the victims, he argued he did so in the heat of passion; therefore, he was only guilty of voluntary manslaughter. On March 24, 2009, the jury returned a verdict of guilty as to both counts of first-degree murder.

Prior to trial, both Spellman and the State filed motions in limine, and a hearing was held. The court preliminarily ruled that any evidence of Amy's or Odikro's "past acts of violence or their propensities for violence," or evidence that Amy had "harmed Mr. Spellman with knives or was otherwise violent toward him," would not be allowed. During trial, Spellman attempted again to enter into evidence testimony that would indicate Amy had violent tendencies, that she had attacked him with a knife on previous occasions, and that when she was not medicated she had a violent temper. In Spellman's offer of proof, the following exchange occurred between Amy's then thirteen-year-old son and Spellman's counsel:

> Q: You have seen your mother hurt Atiba; isn't that true? A: Yes.
> Q: And your mom, she would have trouble keeping her cool? A: Yes.
> Q: If she got mad, she would just go wild? A: Sometimes.
> Q: You saw her take a swing at Atiba once. A: Yes.
> Q: And all he did was block that? A: Yes.
> Q: You've seen your mom threaten Atiba with a knife; isn't that true? A: Yes
> Q: And you've seen your mom cut Atiba more than once; isn't that true? A: Yes.
> Q: In fact, you've seen scars on Atiba's body from where she's cut him in the past? A: Yes
> Q: He has a scar on his head from that. A: Yes.
> Q: And your mom's supposed to take some medication; is that right? A: Yes.
> Q: And if she doesn't take her medication, she just goes wild; isn't that true? A: Yes.
> Q: That's a yes? A: Yes.
> Q: And you told all these things to law enforcement, didn't you? A: Yes.

The district court reaffirmed its pretrial ruling, finding the testimony not relevant, given no defense of justification was being offered. Spellman also made an offer

of proof with David as the witness, which the district court denied for lack of relevance.

After the State rested, Spellman moved for a judgment of acquittal in which he again sought to allow Amy's son to testify as to specific events between Amy and Spellman. The court found the testimony inadmissible under Iowa Rule of Evidence 5.405 but ruled it would allow Spellman to testify as to such events, reasoning that it could shed light on his state of mind at the time of the killings. Spellman did not seek a ruling regarding David's testimony. This issue was again raised in Spellman's motion for new trial, and in an order filed May 7, 2013, the court ruled the evidence was properly excluded and Spellman was not prejudiced.

At trial, Spellman's testimony focused on his heat-of-passion defense, though he denied he was acting in self-defense. He described occasions when Amy had been angry with him and had several times come at him, cutting him with a knife. On the night of the killings, Spellman testified he knocked on Odikro's front door shortly after 2 a.m. when he saw a light turn on inside. He stated Amy answered the door wrapped only in a blanket, told him to leave, and spat at him; he stated she then shut the door on his fingers, closed and locked the deadbolt. It was at this point Spellman asserted he "snapped," after which he "plowed" through the locked door and found Amy—now completely nude—reaching for a knife near the couch. They struggled, and Spellman cut his hand while reaching for and taking the knife from Amy. Odikro then jumped on Spellman's back, prompting Spellman to swing around and stab Odikro in the

neck, after which he turned his attention to Amy and began stabbing her. He claims he does not remember many of the actual details of the stabbings.

Spellman appeals from his convictions, arguing the district court erred in excluding the testimony of Amy's son, as well as that of David Varnell. He asserts the evidence of Amy's violent tendencies is pertinent to his heat-of-passion defense and his constitutional right to a fair trial was violated when the district court excluded this evidence.

## II. Standard of Review

We review evidentiary rulings for an abuse of discretion. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009).

## III. Error Preservation

The State contends Spellman did not preserve error with regard to David's testimony and his constitutional challenge. We agree.

To preserve error on appeal, the party must first state the objection in a timely manner, in addition to presenting the basis for the objection. *State v. Krogmann*, 804 N.W.2d 518, 524 (Iowa 2011). The court must then rule on the issue. *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012). "If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Id.* (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002)).

Here, David's testimony regarding Amy's character was excluded based on relevance. This ruling was issued before Spellman offered his theory of the case, that is, he was guilty of voluntary manslaughter due to a serious provocation, rather than first-degree murder, requiring proof of malice

aforethought and premeditation. *See* Iowa Code §§ 707.1, .2, .4. However, following the articulation of Spellman's defense, he renewed his request to question Amy's son about her violent propensities but did not renew the request with respect to David. This is reflected in Spellman's motion for judgment of acquittal and again in his motion for new trial, which lists Amy's son's testimony as improperly excluded but does not mention David's testimony. Moreover, at no time during trial or in his posttrial motions did Spellman argue his constitutional rights were violated. Consequently, Spellman did not present these arguments before the district court, and therefore, he did not preserve error. *See Lamasters*, 821 N.W.2d at 864.*.*

**IV. Character Evidence**

Iowa Code section 707.4 defines voluntary manslaughter as occurring when the defendant:

> [C]auses the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain control and suppress the impulse to kill.

There is an objective and subjective component with regard to this defense. Subjectively, the defendant must "act solely as a result of sudden, violent, and irresistible passion"; objectively, this "must result from serious provocation sufficient to excite such passion in a reasonable person." *State v. Inger*, 292 N.W.2d 119, 122 (Iowa 1980); *see also State v. Rutledge*, 47 N.W.2d 251, 259 (Iowa 1951) (holding the "heat-of-passion" defense could not succeed because

there was insufficient evidence of an act on the part of the victim that would incite an "irresistible passion" in a reasonable person).

With respect to character evidence, Iowa Rule of Evidence 5.404(a) states: "Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion." An exception occurs if the evidence concerning the victim's character is "a pertinent trait." Iowa R. Evid. 5.404(a)(2)(A). Our supreme court has noted that in order to be considered pertinent, the character trait "must bear a special relationship to or be involved in the crime charged." *State v. Martinez*, 679 N.W.2d 620, 624 (Iowa 2004) (internal citation omitted).

As an initial matter, we note Spellman's reliance on *State v. Jacoby*, 260 N.W.2d 828 (Iowa 1977)—which, he asserts, supports his argument that this evidence was relevant—is misplaced. *Jacoby* held certain evidence of the victim's character may be admitted when it supports the defendant's theory that he committed murder in self-defense. 260 N.W.2d at 837. No theory of self-defense was offered here; rather, Spellman affirmatively denied that defense in his testimony. Consequently, the holding of *Jacoby* does not support Spellman's claim.

Moreover, given the facts of this case, the district court did not abuse its discretion when excluding the testimony of Amy's son as to Amy's character. Primarily, it was not pertinent to Spellman's heat-of-passion defense. Whether or not Amy previously engaged in violent acts does not bear on whether the murders were the "result of [a] sudden, violent, and irresistible passion." *See*

Iowa Code § 707.4. Rather, to support this defense, Spellman would have had to show a "serious provocation" at the time of the offense that resulted in this "sudden, irresistible passion," which would not include the victim's prior behavior. *See generally State v. Thompson*, 836 N.W.2d 470, 476–77 (Iowa 2013) (holding the district court properly declined to instruct the jury on manslaughter because the victim's act of slapping the defendant and giving him the middle finger on prior occasions did not amount to a "serious provocation" within the meaning of Iowa Code section 707.4 (2011)).

Furthermore, on appeal, Spellman contends his defense consisted of the argument that Amy's past violent behavior had a "cumulative effect" until he finally "snapped." Thus, the purpose of introducing this evidence was to show that the cumulative effect of her behavior is what caused him to "explode." *See State v. Thomas*, 151 N.W. 842, 844 (Iowa 1915) (holding the wife's adultery constituted "present provocation" such that the defendant's crime could be considered voluntary manslaughter).[2] However, this is not a pertinent character trait within the meaning of our case law. *See Martinez*, 679 N.W.2d at 624 (noting that evidence of the victim's character may be admitted "if it is particularly involved in the crime alleged"). This follows because, as previously noted, the victim's prior behavior does not constitute a serious provocation at the time of the offense, and therefore, we decline to conclude that Amy's behavior was "pertinent." *See id.*; *Thompson*, 836 N.W.2d at 476. Additionally, the other conceivable purpose for introducing the evidence of Amy's past behavior would

---

[2] We note the statute defining the crime of manslaughter was enacted in 1976, and that before this, the heat-of-passion defense was based in common law. *See Thomas*, 151 N.W.2d at 843–44; *see also* Iowa Code § 707.4 (1976).

be to show she acted in conformity therewith on the night of her murder. However, this is not a permissible use of this evidence, given her prior behavior was not pertinent to Spellman's defense of voluntary manslaughter. *See* Iowa R. Evid. 5.404(a).

Having considered Spellman's arguments, we conclude the district court did not abuse its discretion when it excluded the testimony of Amy's son regarding her character. Therefore, we affirm Spellman's convictions.

**AFFIRMED.**