# IN THE COURT OF APPEALS OF IOWA

No. 19-1297
Filed January 21, 2021

**SAMUEL MEDINA GOMEZ,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Samantha J. Gronewald, Judge.

A convicted sex offender appeals the denial of his application for postconviction relief. **AFFIRMED.**

Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., Ahlers, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Presiding Judge.**

Serving a prison term not to exceed fifty years for eight sex crimes, Samuel Medina Gomez contests the denial of his application for postconviction relief. He claims his criminal defense was subpar because counsel declined to call his two sisters as character witnesses. Because Medina Gomez fails to show he was prejudiced by counsel's omission, we affirm.

### I.    Facts and Prior Proceedings

This prosecution involved four child victims, ranging in age from seven to fourteen. In 2011, those girls reported to Ankeny police that Medina Gomez had engaged in sexual contact with them. The oldest girl also recalled Medina Gomez showing her pornography.

Police interviewed Medina Gomez, who "broke down and started crying" midway through the video-recording. The district court summarized: "He said he had been holding something inside too long. His family did not know anything about this. He related that he had been abused by men as a boy back in Tijuana, [Mexico]." As the interview ended, Medina Gomez insisted he did not "want to touch" the girls but admitted he could "not control it."

The State charged Medina Gomez in a twelve-count trial information, alleging multiple counts of second-degree sexual abuse and other sexually-related offenses. Medina Gomez waived his right to a jury trial, opting to have the district court decide his guilt. The four girls testified. So did Medina Gomez. Recanting his tearful admissions to police, Medina Gomez denied touching the girls in a sexual way or showing them "adult movies." But the court found that the girls

delivered credible testimony and convicted Medina Gomez of eight sex crimes.[1] Medina Gomez received a prison sentence not to exceed fifty years. We affirmed that sentencing order on direct appeal. *State v. Medina Gomez*, No. 12-0859, 2013 WL 1453179, at *2 (Iowa Ct. App. Apr. 10, 2013).

Three years later, Medina Gomez applied for postconviction relief. Among his claims was that defense counsel "failed to investigate or call witnesses who would have been favorable to the defendant at trial." To bolster that claim, Medina Gomez offered testimony from two of his sisters at the postconviction proceedings. His younger sister, Gloria, described her brother as an attentive father whom she trusted to babysit her own children. Gloria said Medina Gomez's lawyer never asked her to share that view at the criminal trial. But she agreed she did not have any direct knowledge of the interaction between Medina Gomez and the alleged victims. Likewise, she was unaware that her brother suffered abuse as a child. A similar positive portrayal of Medina Gomez came from another sister, Raquel. She depicted her brother as "a very involved father" who would not sexually abuse children. She testified that she attended the criminal trial but was never called to testify. But she also admitted at the postconviction hearing that she had no information about the actual charges.

Unpersuaded by the sisters' testimony, the district court denied relief. The court was "unclear how their testimony would have altered the evidence of [Medina Gomez's] guilt." Counsel's disinclination to call the sisters as character witnesses,

---

[1] The convictions included three counts of second-degree sexual abuse, one count of assault with intent to commit sexual abuse, three counts of indecent contact with a child, and one count of dissemination of obscene material to a minor.

in the court's view, was "best summarized as a strategic decision" and "not a basis for postconviction relief."  Medina Gomez now appeals.

## II.    Scope and Standards of Review

We generally review the denial of postconviction relief for errors at law.  *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).  But because Medina Gomez alleges ineffective assistance of counsel, we review his claim de novo.  *See Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

## III.    Analysis

To succeed in his claim, Medina Gomez must show that his attorney (1) performed below professional standards and (2) prejudice resulted.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  He must prove both prongs by a preponderance of the evidence.  *See Ledezma*, 626 N.W.2d at 142.  But if the record shows no prejudice, we may reject his claim on that basis alone.  *See Strickland*, 466 U.S. at 697.  To prove prejudice, Medina Gomez must establish a reasonable probability exists that, but for counsel's omission, "the result of the proceeding would have been different."  *Id.* at 694.  Posed differently, was the likelihood that the omission impacted the trial great enough to "undermine confidence" in the outcome?  *Id.*

In arguing prejudice, Medina Gomez insists that the prosecution "thrust" his character "into the heart of the trial."  He recounts the prosecutor asking him on cross-examination why he would "admit to things that didn't happen" in his police interview.  Pointing to that "attack on [his] character," Medina Gomez contends, trial counsel "had a duty to attempt to rehabilitate him."  And how could counsel do

so? By calling his sisters who "were able and ready to testify on his behalf." He argues the failure to do so resulted in "great prejudice" to him.

We assess Medina Gomez's desire for character evidence under Iowa Rule of Evidence 5.405(a), though he does not cite that authority on appeal. The character-evidence rule provides:

> When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

Iowa R. Evid. 5.405(a).

To be admissible, proof of a character trait must "directly relate to a particular element or facet of the crime charged." *State v. Martinez*, 679 N.W.2d 620, 624 (Iowa 2004). The sisters' proposed testimony does not fit that bill. As the State argues, the sisters could "not have helped explain away" Medina Gomez's admissions or the victims' testimony.[2] As he told police, his family was unaware he had been abused. Plus, the sisters "had no first-hand knowledge as to the truth or falsity of the facts described in the victims' testimony."

Even if we assume the district court would have allowed the sisters to testify as character witnesses, their views would not have shaken our faith in the verdict. The State emphasizes the court's finding that the children "were nervous about testifying, but their testimony was believable." The court also determined that each

---

[2] The State also argues "it may have been valid strategy to decline to call character witnesses, because testimony on a pertinent character trait opens the door to rebuttal evidence that may have included specific acts that could have negated such a defense." *See* Iowa R. Evid. 5.405(a); *see also Devers v. State*, No. 08-0592, 2009 WL 1676643, at *3 (Iowa Ct. App. June 17, 2009).

child's individual testimony about separate incidents of "unwanted contact" with Medina Gomez lent credibility to the others' testimony. In another credibility finding, the court declared Medina Gomez's police interview as "more compelling evidence" than his account on the witness stand.

Against the strength of the State's criminal case, the sisters' willingness to vouch for their brother is unimpressive. They were incredulous that their brother was capable of the crimes charged. But their disbelief was mired in ignorance of his formative past, as well as his present proclivities. Their naive impression of his parenting would not have offset the children's testimony or Medina Gomez's own admissions to police. Medina Gomez is unable to show that but for defense counsel's failure to call the sisters as character witnesses, there existed a reasonable probability of a different outcome. The district court appropriately denied postconviction relief.

**AFFIRMED.**