**JASON KEALOHA**, Plaintiff–Appellee, v. **COUNTY OF HAWAII**, Defendant–Appellant

NO. 15963

(CIV. NO. 90–108K)

JANUARY 15, 1993

LUM, C.J., MOON, KLEIN, AND LEVINSON, JJ.,
AND CIRCUIT COURT JUDGE MILKS,
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY MOON, J.

Defendant–appellant County of Hawaii (County) appeals from the judgment entered against it following a jury trial in a negligence action brought by plaintiff–appellee Jason Kealoha (Kealoha), an injured motorcyclist. On appeal, the County contends the trial court erred in denying its motions in limine to admit evidence that

Kealoha had not been wearing a helmet at the time of the accident and that Kealoha did not have a license to operate a motorcycle. The trial court denied both motions on the grounds that: 1) in Hawaii there is no tort duty on the part of a motorcyclist to wear protective headgear; and 2) the probative value of the evidence that Kealoha had no motorcycle license was substantially outweighed by the danger of unfair prejudice to him. Because we decline to recognize a tort duty on the part of motorcyclists to wear protective headgear, and because we agree with the trial court on the prejudicial effect of admitting the evidence that Kealoha did not have a motorcycle license, we affirm the trial court's denial of both of the County's motions.

Additionally, this case had been arbitrated through the Court–Annexed Arbitration Program (CAAP), and Kealoha had been awarded nothing. Having lost at arbitration, Kealoha appealed and requested a trial *de novo*. Following the trial, the court granted Kealoha's motion for sanctions pursuant to Rule 26 of the Hawaii Arbitration Rules (HAR), awarding him $5,000 in attorney's fees. The County also appeals the trial court's award of attorney's fees, alleging that the court erroneously interpreted HAR 26. We agree, and therefore the trial court's grant of attorney's fees to Kealoha is reversed.

## I. BACKGROUND

On the evening of July 8, 1989, Kealoha was injured when the motorcycle he was operating skidded out from under him as he attempted to negotiate a bend on Alii Drive in Kailua–Kona, County of Hawaii. Loose gravel, scattered over the downhill bend, was determined to have caused Kealoha to lose control of his motorcycle. Kealoha

suffered moderate to serious injuries to his face, teeth, fingers, arms, and legs.[1]

On April 30, 1990, Kealoha filed a negligence action against the County, alleging improper maintenance of Alii Drive. The lawsuit was referred to the CAAP, and the arbitration hearing was held on December 4, 1990. On May 13, 1991, the arbitrator issued a decision finding Kealoha ninety percent liable and the County ten percent liable for the accident. By operation of the comparative negligence statute, Hawaii Revised Statutes (HRS) § 663–31,[2] Kealoha was barred from recovering damages against the County.

Pursuant to HAR 22, Kealoha appealed the arbitrator's decision and requested a trial *de novo*. Prior to trial, the County submitted two motions in limine to the trial court: 1) to admit evidence that Kealoha was not wearing a helmet when the accident occurred and to instruct the jury that it must reduce any damages awarded to Kealoha

---

[1] A passenger, riding with Kealoha, also suffered injury, but she was not a party to the lawsuit in this case.

[2] In relevant part, HRS § 663–31 provides:

> (a) Contributory negligence shall not bar recovery in any action . . . if such negligence was not greater than the negligence of the person . . . against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury . . . recovery is made.
>
> . . . .
>
> (c) . . . [T]he court shall reduce the amount of the award in proportion to the amount of negligence attributable to the person for whose injury . . . recovery is made; provided that if the said proportion is greater than the negligence of the person . . . against whom recovery is sought, the court will enter a judgment for the defendant.

HRS § 663–31 (1985).

if it found that his failure to wear a helmet was unreasonable and contributed to his injuries; and 2) to admit evidence that Kealoha did not have a license to operate a motorcycle.

Following a hearing, the trial court denied both motions. On the first motion, the court found that: 1) at present, the majority of states do not allow admission of helmet non–use; 2) the defendant should not be permitted to diminish the consequences of its own negligence in causing the accident; 3) reducing damages for failure to wear a helmet would result in a windfall for tortfeasors; 4) to admit evidence of helmet non–use would lead to a battle of the experts; 5) the defendant must take the plaintiff as it finds him; and 6) mitigation of damages is traditionally based only on plaintiff's post–accident conduct.

On the second motion, the court ruled that although evidence of Kealoha's unlicensed status would be relevant to the issue of negligence, the probative value of that evidence, under Hawaii Rules of Evidence (HRE) 403, was substantially outweighed by the danger of unfair prejudice to Kealoha. The court cited the danger that the jury might automatically assume that an unlicensed driver was incompetent to operate a motorcycle.

On December 6, 1991, a jury verdict was rendered, apportioning liability fifty percent to Kealoha and fifty percent to the County. The jury awarded Kealoha $15,000 in special damages and $27,500 in general damages. Judgment was entered in favor of Kealoha, pursuant to HRS § 663–31, in the amount of $21,250. Having prevailed at the trial *de novo*, Kealoha subsequently moved for sanctions pursuant to HAR 26. The trial court granted the motion, awarding Kealoha $5,000 in attorney's fees.

The County now appeals from the trial court's entry of judgment. Specifically, the County contends that the trial

court erred in refusing to admit the evidence of Kealoha's non–use of a helmet and his unlicensed status. The County also argues that the trial court erroneously interpreted HAR 26 in awarding attorney's fees to Kealoha.

## II. DISCUSSION

The County asserts that the trial court erred as a matter of law when it refused to admit evidence that Kealoha was not wearing a helmet when the accident occurred. Essentially, the County argues that the trial court erroneously refused to recognize a duty on the part of Kealoha to mitigate damages in a motorcycle accident by wearing protective headgear. The County contends that if it could demonstrate that any of Kealoha's specific injuries were attributable to his non–use of a helmet, the jury would be obliged to reduce any award to Kealoha for those injuries.

### A. Standard of Review

The County contends that the trial court's refusal to admit the evidence in question is essentially a conclusion of law; therefore, the correct standard of review is the right/wrong standard. Traditionally, the rule concerning the admissibility of evidence, which appellate courts in Hawaii have followed, is that the trial court is vested with discretion to admit or exclude evidence, and the court's discretion will not be reversed absent an abuse of that discretion. *State v. Nakamura*, 65 Haw. 74, 648 P.2d 183 (1982); *State v. O'Daniel*, 62 Haw. 518, 616 P.2d 1383 (1980); *State v. Buffalo*, 4 Haw. App. 646, 674 P.2d 1014 (1983), *cert. denied*, 67 Haw. 686, 744 P.2d 781 (1984). However, both this court and the Intermediate Court of Appeals (ICA) have reviewed evidentiary rulings according to a standard other than abuse of discretion, depending on which particular rule of evidence was at issue.

For example, in **Kaeo v. Davis**, 68 Haw. 447, 719 P.2d 387 (1986), the trial court ruled that evidence of the defendant–driver's consumption of liquor prior to the automobile accident at issue, without more, was not admissible. On appeal, this court ruled that the trial court had erred in not admitting the evidence of defendant's drinking. *Id.* at 451–53, 719 P.2d at 390–92. However, that ruling was not based solely on the abuse of discretion standard. The evidence of defendant's drinking was first analyzed under the rules of evidence concerning relevance, that is, Hawaii Rules of Evidence (HRE) 401 and 402.[3] Because this court concluded that the evidence was "unquestionably" relevant to the plaintiff's negligence claim, *id.* at 453, 719 P.2d at 391–92, there could have been no discretion in the trial court to decline to admit the evidence. Conversely, we note that if the trial court had found that the evidence was not relevant, it would likewise have had no discretion to admit the evidence, given the clear mandate of HRE 402, that is, "[e]vidence which is not relevant is not admissible." HRE 402.

Implicit in *Kaeo* was the ruling that the trial court had erred in its application of HRE 401 and 402 to the evidence at issue. Thus, because the evidence was relevant under HRE 401, and because HRE 402 states unequivocally that, subject only to certain explicit exceptions, "all relevant evidence is admissible," that portion of the trial

---

[3] HRE 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

HRE 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

court's ruling was reviewed under the right/wrong standard.

The *Kaeo* court, however, continued its consideration of the evidence at issue, pointing out that once a trial court has determined that the evidence is relevant, and therefore admissible, it must often balance its probative value against the danger of unfair prejudice before allowing its admission under HRE 403.[4] The court in *Kaeo* concluded that the determination of the admissibility of relevant evidence under HRE 403 is eminently suited to the trial court's exercise of its discretion because it requires a "cost–benefit calculus" and a "delicate balance between probative value and prejudicial effect[.]" *Id.* at 454–55, 719 P.2d at 392. Applying HRE 403, the court held that "[t]he trial judge's decision not to permit the jury to hear [evidence of defendant's drinking] was an abuse of discretion amounting to error, and we cannot say it had no effect upon the outcome of the trial." *Id.* at 455, 719 P.2d at 392. Thus, the *Kaeo* court demonstrated how a trial court's evidentiary rulings may require an appellate court to apply different standards of review, depending on the particular evidentiary rule at issue.

In ***State v. Rabe***, 5 Haw. App. 251, 687 P.2d 554 (1984), the ICA likewise ruled that the traditional abuse of discretion standard may not necessarily be appropriate when reviewing a trial court's ruling on the admissibility of evidence; it depends on the particular evidence rule involved. In *Rabe*, the trial court had refused to admit

---

[4] HRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." HRE 403.

testimony regarding the defendant's character for truthfulness because, under HRE 608(a)(2), "[e]vidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise," *id.* at 253, 687 P.2d at 557, and because the defendant's character for truthfulness had not been so attacked.

The ICA reviewed the trial proceedings and concluded the trial court had correctly determined that the defendant's character for truthfulness had not been attacked. *Id.* at 260, 687 P.2d at 561. In explicitly addressing the question of the proper standard of review under HRE 608(a)(2), the ICA stated:

> It has generally been stated that the standard of review of the trial judge's decision to exclude evidence in a criminal case is the abuse of discretion standard.
>
> . . . Under that standard different trial judges may, on the same facts, arrive at opposite rulings without any of them being reversible on appeal.
>
> We disagree with the application of the abuse of discretion standard of review to the trial court's exclusion of evidence under Rule 608(a).
>
> Rule 608(a) imposes precise limitations. It states specifically who may introduce what evidence and when. Each set of facts has only one correct answer.

*Id.* at 260–61, 687 P.2d at 561 (citations omitted).

The ICA held that if the substance of the evidence was made known to the trial court by a proper offer of proof, pursuant to HRE 103(a)(2),[5] the appellate court

---

[5] HRE 103 provides, in pertinent part, as follows:

must then decide whether the trial court's exclusion of the evidence was "right or wrong under Rule 608(a)." *Id.* at 262, 687 P.2d at 561. In ruling that the trial court had correctly excluded the proffered witness' testimony under HRE 608(a)(2), *id.* at 262, 687 P.2d at 562, the ICA added HRE 608(a) to the list of those rules of evidence, including HRE 401 and 402, under which a trial court's ruling on the admissibility of evidence will require the appellate court to apply the right/wrong standard instead of the abuse of discretion standard of review.

But for a few exceptions, such as *Kaeo* and *Rabe*, both this court and the ICA have applied the traditional abuse of discretion standard to review evidentiary rulings no matter what specific rule of evidence was at issue, and this persistence has sometimes led to some anomalous reasoning. For example, in **State v. Motta**, 66 Haw. 254, 659 P.2d 745 (1983), the appeal centered on the trial court's admission of a police composite sketch, which the defendant–appellant claimed was inadmissible hearsay.

This court determined that the police sketch, although hearsay, would still be admissible as a hearsay exception if, under HRE 802.1(3),[6] "1) the declarant testifies at trial and is subject to cross–examination concern-

---

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:
. . . .
  (2)  Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

[6] HRE 802.1 provides, in pertinent part:

The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:

ing the subject matter of his statement and 2) the statement is one of identification of a person made after perceiving him." *Id.* at 262, 659 P.2d at 750–51. In light of *Rabe*, it would seem that the right/wrong standard of review for this particular evidentiary issue would be the correct standard. Like HRE 608(a) discussed in *Rabe*, HRE 802.1(3) clearly imposes two specific requirements in order for certain evidence to qualify as a hearsay exception, and there can be only one correct answer regarding its admissibility. We concluded that, according to the trial record, "the admission of the sketch met the requirements of [HRE] 802.1(3)." *Id.* at 262, 659 P.2d at 751.

In so doing, this court applied the traditional abuse of discretion standard and determined that there was "no reason to disturb the trial court's discretion in admitting the sketch into evidence." *Id.* at 263, 659 P.2d at 751. But as the ICA pointed out in *Rabe*, under the abuse of discretion standard,

> the trial court may not be reversed by an appellate court unless the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. Under that standard different trial judges may, on the same facts, arrive at opposite rulings without any of them being reversible on appeal.

*Rabe*, 5 Haw. App. at 260–61, 687 P.2d at 561 (citation

---

. . . .

> (3) Prior identification. The declarant is subject to cross–examination concerning the subject matter of [the declarant's] statement, and the statement is one of identification of a person made after perceiving [that person.]

HRE 802.1(3).

omitted); *see also* **State v. Hoopii**, 68 Haw. 246, 710 P.2d 1193 (1985). Because the only question under HRE 802.1(3) is whether the specific requirements of the rule were met, there can be no discretion in the trial court. Therefore, the correct standard of review is right/wrong.

Similarly, in **State v. Buffalo**, 4 Haw. App. 646, 674 P.2d 1014 (1983), *cert. denied*, 67 Haw. 686, 744 P.2d 781 (1984), the ICA was confronted with an appeal from the trial court's admission of a mere "abstract of judgment," instead of the requisite certified copy of the judgment as evidence that the defendant had a prior felony conviction. The ICA surveyed the applicable law, including the "best–evidence" rule, and concluded that the abstract of judgment was not "competent to prove the prior conviction," and was thus inadmissible. *Id.* at 650, 674 P.2d at 1018.

Because the ICA determined that the evidence had simply failed to fulfill the applicable requirements for admission by the trial court, the correct standard of review would seem to be right/wrong. However, the ICA proceeded to apply the traditional abuse of discretion standard, and implicitly ruled that the trial court had abused its discretion by admitting the abstract of judgment into evidence. *Id.* Again, because there could only be one correct answer to the admissibility question, based on the ICA's analysis, the right/wrong standard of review would have been the proper one for the court to have applied.

We conclude that different standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of

discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

### B. **Non–Use of a Motorcycle Helmet**

In this case, the trial court refused to admit evidence that Kealoha was not wearing a helmet because it determined that Kealoha had no duty to do so under present Hawaii law, and the court declined to recognize such a duty. Implicit in the trial court's refusal to admit the proffered evidence was a finding that Kealoha's failure to wear a helmet was simply not relevant under HRE 401 and therefore must be excluded under HRE 402. Based on the foregoing discussion, the trial court's refusal to admit evidence of Kealoha's non–use of a helmet must be reviewed under the right/wrong standard of review.

The County recognizes that there is no common law tort duty on the part of motorcyclists in Hawaii, who may be injured in potential accidents, to mitigate damages by wearing protective headgear. Therefore, under the present state of the law, the trial court was correct in finding that the proffered evidence was not relevant and thus not admissible. The County admits that in 1977 the State of Hawaii repealed a statute that had formerly required all motorcyclists to wear helmets.[7] The County further admits that the majority of jurisdictions that have

---

[7] In 1977, Act 183 specifically deleted the helmet requirement for motorcyclists from HRS § 286–81. The Senate standing committee reporting on the bill, which became Act 183, stated that the fatality rate for motorcycle accidents nationwide had remained constant, despite the introduction of helmet laws and concluded "that the effectiveness of the safety helmet in the reduction of fatalities has not been demonstrated." Sen. Stand. Comm. Rep. No. 226, in 1977 Senate Journal, at 953. The committee also reported that "there is evidence that fatal neck injuries have increased among riders wearing helmets." *Id.*

considered the issue have ruled against instituting a common law duty on the part of motorcyclists to wear protective headgear.[8] However, the County argues that the trial court should have recognized such a common law duty and admitted the proffered evidence.

In support of its argument, the County principally relies on *Warfel v. Cheney*, 157 Ariz. 424, 758 P.2d 1326 (1988). In *Warfel*, an Arizona intermediate appellate court ruled that evidence of a plaintiff's non–use of a helmet would be admissible on the issue of damages if the defendant could demonstrate that the plaintiff's non–use specifically contributed to his injuries. *Id.* at 430, 758 P.2d at 1332. However, the court in *Warfel* principally relied on the reasoning of an earlier Arizona Supreme Court decision,[9] which held that the failure of a motorist to wear *a seatbelt* was admissible in a negligence case to reduce the amount of plaintiff's damages. *Id.* at 427–31, 758 P.2d at 1329–33. Thus, the *Warfel* court merely extended the boundaries of a recent precedent regarding seatbelts that had established the groundwork for essentially creating a new common law tort duty.

By contrast, Hawaii has no common law tort duty requiring motorists to wear their seatbelts at the risk of being charged with a failure to mitigate damages should an accident occur. This court has thus not taken the inter-

---

[8] *See* **Rogers v. Frush**, 257 Md. 233, 262 A.2d 549 (1970); **Burgstahler v. Fox**, 290 Minn. 495, 186 N.W.2d 182 (1971); **Bond v. Jack**, 387 So. 2d 613 (La. App. 1980), *aff'd sub. nom.* **Bond v. Commercial Union Assurance Co.**, 407 So. 2d 401 (La. 1981); **Dare v. Sobule**, 674 P.2d 960 (Colo. 1984); **Hukill v. Di Gregorio**, 136 Ill. App. 3d 1066, 484 N.E.2d 795 (1985); **Meyer v. City of Des Moines**, 475 N.W.2d 181 (Iowa 1991).

[9] *See* **Law v. Superior Court**, 157 Ariz. 147, 755 P.2d 1135 (1988).

mediate step that was necessary to the Arizona court's holding in *Warfel*. Moreover, in making the failure to wear a seatbelt a criminal violation under Hawaii law,[10] the legislature specifically provided that the mandatory seatbelt law "shall not be deemed to change existing laws, rules, or procedures pertaining to a trial of a civil action for damages for personal injuries or death sustained in a motor vehicle accident." HRS § 291–11.6(d).

Moreover, we agree with the reasoning of the Iowa Supreme Court, which recently refused to recognize a common law tort duty on the part of motorcyclists to mitigate damages by wearing protective headgear principally in light of the Iowa legislature's repeal of the state's helmet law:

> The helmet question certainly is of vital concern to the legislature. It has legislated in that area twice. . . . [T]here are policy decisions to make which are more properly in the domain of the legislature. For these reasons, we join those courts that have deferred to the legislature. We therefore decline to hold that there is any common law duty for a [motorcycle] operator to wear a helmet.

*Meyer v. City of Des Moines*, 475 N.W.2d 181, 191 (Iowa 1991). We likewise decline to recognize such a common law tort duty and defer the matter to our legislature.

Accordingly, we conclude that the trial court correctly refused to recognize a new tort duty and thus did not err in ruling that the evidence of Kealoha's helmet non–use was not relevant under HRE 401, and therefore, not admissible under HRE 402.

---

[10] *See* HRS § 291–11.6 (1992).

## C. **No Motorcycle License**

The County next claims that the trial court erred in refusing to admit evidence that Kealoha did not have a motorcycle license at the time of the accident. The trial court refused to admit this evidence under HRE 403, holding that whatever relevance the evidence possessed was substantially outweighed by the potential for unfair prejudice to Kealoha. Therefore, we review the trial court's ruling under the abuse of discretion standard.

In its opening brief, the County concedes that "perhaps the initial denial of the County's motion in limine was appropriate." However, the County argues that Kealoha "opened up" the subject of his lack of a motorcycle's license to cross–examination when he "purported to present himself to the jury as an expert or authority on safe motorcycle handling aspects[,]" citing the following statement by Kealoha in response to a question on direct examination:

[Question]: Describe how you made the particular turn on July 8, 1989.

. . . .

[Answer]: Okay. The turn comes down and drops down to the end of Alii Drive over here. So being that the turn is like this, *you want to extend the turn a lot more to make it a safer turn to take.* So I'll approach the turn. This is — well, this is the white line that extends up. I'll start over here at the white line maybe two or three feet from the white line and then proceed towards the center. So if there's anything that comes up within here or over here, I can anticipate for that, right, going out further. . . .

> So being that I took the turn in a fashion like
> — if something did come up, I can widen the turn
> or, you know, adjust to whatever comes up.
> That's how I always take the turn.

(Emphasis added.) Based on this attempt to transform Kealoha's comment into a claim that he was an expert on how to operate a motorcycle safely, the County submits that it should have been allowed to cross–examine Kealoha on his specific credentials or lack thereof.

However, it is obvious from the context of Kealoha's statement that he was merely describing how he executed the bend in the road on the night of the accident. As part of that specific description, Kealoha also included more general comments regarding his usual practice when approaching similar road conditions. Kealoha was clearly not claiming to be any kind of expert on motorcycle safety.

The County's argument completely lacks merit. Neither the trial court's initial determination to exclude the evidence of Kealoha's unlicensed status nor the court's subsequent refusal to allow the County to cross–examine Kealoha on this issue can fairly be considered to have exceeded "the bounds of reason," or to have disregarded "rules or principles of law or practice to the substantial detriment of a party litigant." *Hoopii*, 68 Haw. at 249, 710 P.2d at 1195. Therefore, we conclude the trial court did not abuse its discretion.

## IV.

Finally, the County argues that the trial court erred when it granted Kealoha $5,000 in attorney's fees pursuant to HAR 26. The trial court's grant of attorney's fees under HAR 26 was a conclusion of law and, as such, is reviewable by this court under the right/wrong standard.

*Amfac v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 119, 839 P.2d 10, 29 (1992); *Molokoa Village Dev. Co. v. Kauai Elec. Co.*, 60 Haw. 582, 593 P.2d 375 (1979); *Hilo Crane Service, Inc. v. Ho*, 5 Haw. App. 360, 693 P.2d 412 (1984), *cert. denied*, 67 Haw. 685, 744 P.2d 781 (1985).

Under HAR 26(A), "[a]fter a verdict is received and filed, or the court's decision [has been] rendered in a trial *de novo*, the trial court may, in its discretion, impose sanctions . . . against the non–prevailing party[11] *whose appeal resulted in the trial de novo*." HAR 26(A) (emphasis added). The sanctions available to the court under HAR 26(B)(3) include "[a]ttorney's fees not to exceed $5,000[.]" HAR 26(B)(3).

Kealoha argues that it would be unfair for this court to restrict a construction of HAR 26(A) to its plain meaning. Kealoha claims that such a restricted reading will give parties in the same position as the County no incentive to be forthcoming in "post–arbitration settlement efforts." We find Kealoha's argument to be without merit.[12]

The legislature's purpose in establishing the CAAP was to "reduce delay and costs" and to provide an "alterna-

---

[11] HAR 25(A) defines "prevailing party" as "the party [in a trial *de novo*] who has (1) appealed and improved upon the arbitration award by 15% or more, or (2) has not appealed and the opposing party has appealed and failed to improve upon the arbitration award by 15% or more." Under HAR 25(A)(1), Kealoha is the prevailing party.

[12] At the post–trial hearing on this and other issues concerning the final judgment in this case, the trial court made no findings or ruling on the HAR 26(A) issue; instead, the court took the matter under advisement after hearing the parties' respective arguments. The trial court subsequently issued its judgment, including the award of $5,000 in attorney's fees pursuant to HAR 26, without any comment on its rationale for doing so.

tive to costly and protracted litigation." 1986 Senate Journal at 29 (Spec. Sess). The HAR provide for sanctions against an *appealing* party, that is, a party dissatisfied with an arbitration award, who insists on pursuing a trial *de novo* but fails to improve the award. The purpose of the potential sanctions is to discourage baseless *appeals* from arbitration awards, and thus to discourage incurring further costs and expenses of trial. HAR 26(A)'s restriction of potential sanctions to non–prevailing parties who appeal an award is directly consistent with the foregoing policy.

In contrast, there is no reason to give the windfall of attorney's fees to a party who has appealed an award and successfully improved upon it. A non–prevailing party who has not appealed an award has simply lost; but that party has done nothing to frustrate the CAAP procedure. Consequently, there is no good reason to penalize that party's behavior.

In this case, Kealoha contends that the County was unreasonable in rejecting his *post–arbitration* offer to settle for $25,000. Kealoha's position is untenable. The effect of the arbitrator's decision was that the County owed Kealoha nothing. Therefore, its refusal to pay Kealoha $25,000 to "settle" can hardly be construed as unreasonable.

As the County points out, the language of HAR 26(A) is clear and unambiguous in its restriction of potential sanctions to non–prevailing parties who appeal an arbitration award. Accordingly, we conclude that the trial court erred in awarding Kealoha attorney's fees pursuant to HAR 26.

## V. CONCLUSION

Based on the foregoing, we affirm that portion of the judgment in favor of Kealoha in the amount of $21,250,

and reverse that portion awarding Kealoha $5,000 in attorney's fees pursuant to HAR 26.

On the briefs:

*Michael B. Dabney* and *Joseph K. Kamelamela*, Deputies Corporation Counsel, for defendant–appellant County of Hawaii.

*Walter K. Horie* and *Anthony H. Yusi* of Horie & Yusi, for plaintiff–appellee Jason Kealoha.