**Electronically Filed**
**Supreme Court**
**SCWC-16-0000873**
**13-DEC-2018**
**09:47 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

TYLER K. WAKAMOTO, Petitioner/Defendant-Appellant.
_____

SCWC-16-0000873

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000873; CASE NO. 1DTA-15-05435)

DECEMBER 13, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This appeal arises from the Defendant Tyler K. Wakamoto's conviction for the offense of "Operating a Vehicle under the Influence of an Intoxicant" ("OVUII") in violation of Hawai'i

Revised Statutes ("HRS") § 291E-61(a)(1).[1] The issue on certiorari concerns foundational requirements for the admission of testimony under Hawaiʻi Rules of Evidence ("HRE") Rule 612, when a witness testifies after reviewing a "Writing used to refresh memory."

After Honolulu Police Department ("HPD") Officer Manueli Kotobalavu ("Officer Kotobalavu" or "the Officer") reviewed his report for the second time while testifying over defense objection, the District Court of the First Circuit ("district court")[2] allowed the Officer to testify regarding Wakamoto's field sobriety test without a foundation having been laid that his memory had been refreshed by reviewing the report. In its October 20, 2017 Summary Disposition Order ("SDO"), the Intermediate Court of Appeals ("ICA") affirmed Wakamoto's conviction, stating that no legal authority requires the laying

---

[1] HRS § 291E-61(A)(1) (Supp. 2014) provides:

> **§291E-61 Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
>
> . . . .

[2] The Honorable Dyan K. Mitsuyama presided.

of such a foundation.  See State v. Wakamoto, No. CAAP-16-0000873, at 4 (App. Oct. 20, 2017) (SDO).

In his certiorari application ("Application"), Wakamoto reasserts a question he had posed to the ICA:

> Whether the ICA gravely erred in holding that the district court did not err in denying Wakamoto's objection to an officer's testimony in an OVUII case as refreshed memory when the officer had already reviewed his report once to answer the prosecutor's questions about the standardized field sobriety test?

Legal authority requires that before testimony is admitted pursuant to HRE Rule 612 after a witness reviews a writing while testifying for the purpose of refreshing memory, an evidentiary foundation must be laid establishing that the witness's memory has actually been refreshed.[3]  Therefore, the ICA erred by indicating that no legal authority exists requiring that such a foundation be laid, and the district court erred by admitting Officer Kotobalavu's testimony regarding Wakamoto's field sobriety test over defense objection without requiring the proper evidentiary foundation.

Despite evidentiary error, an appellate court may affirm a judgment of a lower court on any ground in the record that supports affirmance.  See State v. Fukagawa, 100 Hawai'i 498, 506, 60 P.3d 899, 907 (2002) (citations omitted).  After the

---

[3]     Before the witness reviews the writing, a foundation should be laid that the witness does not recall a fact or event and that the writing will help the witness refresh the witness's memory.  See Edward J. Imwinkelried, Evidentiary Foundations 466 (9th ed. 2015).

3

defense objected to Officer Kotobalavu again reviewing his report and questioned whether he had an independent recollection, the deputy prosecuting attorney raised the possibility that the officer's testimony would be admissible under HRE Rule 802.1(4) governing "Past recollection recorded"[4] if it was not otherwise admissible under HRE Rule 612. The State of Hawaiʻi ("the State"), however, did not alternatively argue HRE Rule 802.1(4) to the ICA or to this court, and it is unclear whether the testimony at issue would have been admissible on this basis. In addition, the erroneous admission of evidence is not harmless beyond a reasonable doubt if there is a reasonable possibility that the error might have contributed to the conviction. See State v. Subia, 139 Hawaiʻi 62, 69, 383 P.3d 1200, 1207 (2016). In this case, the district court specifically stated it relied in part on Officer

---

[4]    HRE Rule 802.1(4) provides:

> **Rule 802.1  Hearsay exception; prior statements by witnesses.** The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:
>
> . . .
>
> (4) Past recollection recorded. A memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness'[s] memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Kotobalavu's improperly admitted testimony as a basis for convicting Wakamoto — thus, the improperly admitted testimony contributed to the conviction.  Therefore, the evidentiary error cannot be deemed harmless beyond a reasonable doubt.

Accordingly, we vacate the ICA's November 22, 2017 Judgment on Appeal entered pursuant to its SDO, as well as the district court's Notice of Entry of Judgment and/or Order and Plea/Judgment, and we remand this case to the district court for further proceedings consistent with this opinion.

## II.  Background

### A.    Factual Background and District Court Proceedings

In a complaint dated December 21, 2015, the State charged Wakamoto with committing the offense of OVUII on December 2, 2015, in violation of HRS § 291E-61(a)(1).  A bench trial took place on September 20, 2016 and November 17, 2016.  At trial, HPD Officer Jesse Takushi ("Officer Takushi") and Officer Kotobalavu testified for the State.

According to the officers' testimonies, on December 2, 2015, at about 2:35 a.m., on Kalakaua Avenue fronting the Moana Surfrider Hotel, Officer Takushi conducted a traffic stop on a vehicle he observed twice unsafely crossing a broken white line. When Officer Takushi approached the vehicle, he observed that Wakamoto's eyes were red and watery and that his pupils appeared dilated, and he noticed a strong alcoholic-type odor coming from

5

Wakamoto.  According to Officer Takushi, Wakamoto's responses were delayed and slurred, and he could not locate his registration paperwork.  Wakamoto apparently repeatedly picked up and dropped his license and insurance paperwork, but he did hand them to Officer Takushi in a timely manner.

Officer Takushi testified that when Wakamoto stepped out of the vehicle, he stated on his own accord that he "didn't have anything to drink," but Officer Takushi continued to smell an alcoholic odor.  At about this point of the traffic stop, Officer Kotobalavu, responding to Officer Takushi's radio request for assistance, arrived on the scene.

At the start of his trial testimony more than nine months after the arrest, Officer Kotobalavu could not recall the location of the traffic stop:

> [By the Prosecutor:]
>
> Q.    Do you recall the location of this traffic
>       stop?
> A.    No, sir, I don't recall at this time.
> Q.    Is there something that would help to refresh your
>       memory?
> A.    Yes, my report.
> Q.    Okay.
>             [Prosecutor]: And may the record reflect that
>       I'm showing defense counsel.
>
> By [the Prosecutor]:
>
> Q.    So, Officer, I'm going to hand you your
>       police report.  Just go ahead and look at it silently
>       and look up at me when you're done.
> A.    Okay.
> Q.    And I'm taking the report back.
>       Officer, has your memory been refreshed?
> A.    Yes.
> Q.    Okay.  And do you recall where the location of the
>       traffic stop was?

> A.    Yes.
> Q.    Okay.  And where was that, sir?
> A.    Was front -- was on Kalakaua fronting the Moana
>       Surfrider hotel.

The record does not reflect how long Officer Kotobalavu reviewed his report before resuming his testimony, but he testified that he thought Wakamoto's car was a black two-door Lancer.

Officer Kotobalavu then testified that as he spoke to Wakamoto, he smelled alcohol and saw that Wakamoto had red, watery eyes.  He testified that Wakamoto was then directed to walk about fifteen feet away from his car so that Officer Kotobalavu could conduct a field sobriety test on the dry concrete sidewalk in front of the Moana Surfrider, which was free of debris, well lit, and did not have much foot traffic. He further testified that before conducting the field sobriety test, Officer Kotobalavu asked Wakamoto a series of questions regarding Wakamoto's health.  Officer Kotobalavu also repeatedly asked Wakamoto whether he understood his instructions regarding the tests.  As Wakamoto spoke, Officer Kotobalavu continued to detect the odor of alcohol coming from him.

Regarding the walk-and-turn test, Officer Kotobalavu testified that he instructed Wakamoto on how to place his feet, the direction he should face, and where to place his arms. Officer Kotobalavu testified that he also demonstrated the test and that after Wakamoto got in the correct position to begin the test, he instructed him not to move until he was told to start.

Officer Kotobalavu testified that before being told to start, however, Wakamoto swayed about six inches in both directions and started the test on his own.

Officer Kotobalavu further testified that during the walk-and-turn test, Wakamoto raised his arms at least once about six inches away from his body in order to keep his balance while walking and that Wakamoto took ten steps instead of the instructed nine, and missed a few heel-to-toes, where his heel missed his toe by about one inch.  According to Officer Kotobalavu, contrary to instructions, Wakamoto stopped in the middle of the test.  He testified that after the ninth step, Wakamoto appeared unsure whether he was to turn, and then took an extra step to turn.

After testifying to the foregoing, the following exchange occurred:

> [By the Prosecutor:]
>
> Q    Okay. Is there anything that you recall as far as
>      his performance other than the turn and the things
>      that you had testified about to this point?
> A    No.
> Q    Okay. Is there something that would help refresh
>      your memory?
> A    My report.
> Q    Okay. And --
>
> [Defense counsel]:  Your Honor, at this time
> defense would object.  At this point the Officer had two
> opportunities to review the document.  I'm sure once
> before.  At this point I'm asking is the officer -- does
> the officer have an independent recollection of the events,
> or he's just going off what he's written right now?  He's
> had -- I believe he has had multiple opportunities to look
> at the document, and there is -- I do believe there's a
> difference between the two.

[Prosecutor]:  Your Honor, if that's an issue, I understand [Defense counsel's] point.  If that's an issue, you know, we can make this a past recollection recorded.  I mean, this was in December of last year, your Honor, and the officer conducts these traffic stops routinely, so --

THE COURT:  Overruled.

BY [the Prosecutor]:

Q    Officer, I'm going to hand you your -- your report.  Go ahead and take that -- a look at that silently, and then just let me know when you're done.
A    Okay.
Q    And let the record reflect I'm taking the report back.
        Okay.  Officer, so any other observations that you made of the defendant during just -- just the walk-and-turn just portion of the test?
A    Yes.  As he took the -- his turn, he did take one more extra step, so he turned the wrong way, but as he turned, it wasn't as instructed, short, choppy steps.  He spun on his right foot to turn himself around.
Q    Okay. When you say that he turned the wrong way, which way did he turn?
A    To the right.
Q    Okay.  And which way did you instruct for him to turn?
A    To the left.  If you took nine steps, you would automatically turn to the left.
Q    Okay.  Anything else happened or any other observation that you made during this portion of the test?
A    No.

Officer Kotobalavu then went on to testify regarding the one-leg-stand test.

Officer Kotobalavu testified that, in performing the one-leg-stand test, Wakamoto was required to lift either his right or left leg about six inches from the ground, with his foot remaining parallel to the ground, and with his hands at his sides.  Simultaneously, Wakamoto was required to look down at his feet and count until Officer Kotobalavu told him to stop.

9

Officer Kotobalavu testified that he then demonstrated the test and Wakamoto stated that he understood.

According to Officer Kotobalavu, however, Wakamoto also began this test before being instructed to start.  He testified that, throughout the test, Wakamoto kept his arms raised further than six inches away from his body to keep his balance and that he hopped to maintain his balance and set his foot down twice, primarily during the first twenty (20) seconds of the test.  The officer testified that Wakamoto also swayed at least three times throughout the test.  Officer Kotobalavu stopped the test after thirty (30) seconds, and arrested Wakamoto.

During Officer Kotobalavu's cross-examination, defense counsel began a line of questioning regarding the specific circumstances of the traffic stop, such as whether the vehicle had four or two doors.  After the prosecutor objected, defense counsel explained:

> [Defense counsel]:  This goes to my -- the -- this goes to the witness's ability to recall -- recall information.  What he puts down is pertinent.  I believe that there is no independent recollection (indiscernible) problems, and my only -- this is my opportunity to cross to make sure -- to show proof that there are inconsistencies in his report and in his testimony.
>
> THE COURT: I'm going to allow it.  Go ahead.

Officer Kotobalavu then explained that he had previously testified and had written in his report that the vehicle was a two-door, but according to HPD's vehicle license plate search, Wakamoto's vehicle was a four-door.  Defense counsel asked

Officer Kotobalavu whether he had asked Wakamoto whether he had allergies and whether he had just finished a double shift at work. Officer Kotobalavu also testified on cross-examination that he remembered Wakamoto saying that he had just come from a bar to pick up a friend and Wakamoto could have actually been outside the car when he first approached instead of inside, as he had earlier testified.

During additional cross-examination on the second trial date, Officer Kotobalavu testified during cross-examination that the space between the missed heel-to-toes may have been a half-inch instead of an inch, as he had earlier testified. He also reiterated that he told Wakamoto which way to turn and demonstrated how to execute the test correctly.

Wakamoto then also testified. During direct examination, Wakamoto testified that Officer Kotobalavu did not specify the foot on which he needed to step first or which direction to turn during the walk-and-turn test. Wakamoto testified that the officer also only instructed him to keep his arms at his side. He also testified that he was driving on the night in question because he gave a ride home to a friend who was intoxicated, the most direct route between the bar and his friend's home was down Kalakaua Avenue, and he was familiar with the area.

After considering all of the testimony, the court found Wakamoto guilty as charged. The district court explained its

ruling at length. In considering the testimony, the court found that Wakamoto's breath smelled like alcohol, and that he had red, watery eyes. As to the use of Officer Kotobalavu's report to refresh his recollection, the court stated:

> It is true Officer Kotobalavu indicated sometimes he needed to reference his report and he couldn't remember. Granted that this happened in December of 2015, I totally understand that. He did indicate, though, that when he performs these [field sobriety tests], he specifically instructs, demonstrates, and then instructs again.

The court noted several aspects of the walk-and-turn test that Officer Kotobalavu had testified to before reviewing his report a second time: that Wakamoto had started the walk-and-turn test too soon, missed the heel-to-toe by one inch at least one time, raised his arms away from his body by at least six inches at least one time, stopped in the middle of the test, and took ten steps instead of the instructed nine.

The court also referenced as a basis for the conviction, however, Officer Kotobalavu's testimony after his second review of his report, i.e., that because Wakamoto took an extra step, it followed that he turned the wrong way.

The court then discussed the results of the one-leg-stand test, and found that Wakamoto started the test before instructed, consistently raised his arms through the test, hopped, and put his foot down before the end of the test. The court sentenced Wakamoto to a one-year revocation of license, a

12

minimum fourteen-hour substance abuse assessment program, and various fines and fees.  His sentence was stayed pending appeal.

**B.    Appeal to the ICA and Application for Writ of Certiorari**

Wakamoto timely filed a Notice of Appeal to the ICA, and presented a single argument, which he again raises on certiorari:

> The district court erred in denying Wakamoto's request to determine if the [standard field sobriety test] officer was testifying from his memory or from a past recollection recorded.

Wakamoto argued:

> In this case, Officer Kotobatavu [sic] was permitted to see his report a second time to try to refresh his memory of Wakamoto's [field sobriety test] over defense objection that it was unclear if his memory was actually refreshed or he was testifying to a past recollection for which he had no present personal knowledge.  Instead of overruling the defense objection, the district court should have asked, or let defense counsel ask, if his memory was actually refreshed or not.  It was error for the court not to do, and it involved a critical piece of evidence.

The ICA rejected the challenge.  The ICA indicated that there was "no evidence, such as an admission that he relied solely on his report or a failure to recall other details about his arrival on the scene, to suggest that [Officer Kotobalavu] based his testimony only on what he read in the report."  Wakamoto, SDO at 2 (citations omitted).  The ICA also stated that before looking at his report the second time, Officer Kotobalavu "recalled numerous details about the incident, including Wakamoto's appearance and odor, how he conducted and Wakamoto performed the [horizontal gaze] test, and other aspects of

13

Wakamoto's performance of the Walk-and-Turn test."  Wakamoto,

SDO at 3 (citations omitted).  The ICA then stated, "It is

reasonable under the circumstances to infer that the [field

sobriety test] report merely jogged Officer Kotobalavu's memory.

Wakamoto provides no authority for the contention that an

officer is required to say whether his recollection was

refreshed after looking at the report, and we find none."

Wakamoto, SDO at 4 (emphasis added).

     In his Application, Wakamoto reasserts the argument made to

the ICA:

> Whether the ICA gravely erred in holding that the district
> court did not err in denying Wakamoto's objection to an
> officer's testimony in an OVUII case as refreshed memory
> when the officer had already reviewed his report once to
> answer the prosecutor's questions about the standardized
> field sobriety test?

(some capitalization removed).  Wakamoto asserts in his

Application that "no foundation had been laid" for Officer

Kotobalavu's testimony regarding the field sobriety test after

his second review of his police report.

### III.  Standard of Review

     Errors on evidentiary rulings are subject to the abuse of

discretion standard unless the application of the evidentiary

rule in question can produce only one correct answer, in which

case, we review the alleged error under the "right/wrong"

standard.  Kealoha v. County of Hawai'i, 74 Haw. 308, 315, 319–

20, 844 P.2d 670, 674, 676 (1993); State v. Dibenedetto, 80

14

Hawai'i 138, 145, 906 P.2d 624, 631 (App. 1995) (citing <u>Kealoha</u>, 74 Haw. at 315, 844 P.2d at 674). Because a witness cannot be permitted to testify if the witness has no present recollection, we apply the "right/wrong" standard in determining the correctness of a ruling regarding the admissibility of testimony under HRE Rule 612. <u>See</u> <u>Kealoha</u>, 74 Haw. at 319-20, 844 P.2d at 676.

## IV. Discussion

### A. Evidentiary foundation required by HRE Rule 612

As indicated above, the first time Officer Kotobalavu reviewed his report, he testified in response to the deputy prosecuting attorney's question that his memory had been refreshed before continuing to testify. The second time he asked to see his report, defense counsel objected, raising questions regarding whether the officer actually had a present memory or whether he was testifying off of his report. The court overruled the objection, and the officer continued to testify regarding Wakamoto's field sobriety test without stating that his memory had been refreshed by reviewing his report.

Wakamoto asserts that the district court erred by overruling his objection and allowing Officer Kotobalavu to testify regarding the field sobriety test after reviewing his report the second time because HRE Rule 612 requires a foundation to have been laid that the Officer's memory was

15

actually refreshed before he resumed his testimony. The ICA stated "Wakamoto provides no authority for the contention that an officer is required to say whether his memory was refreshed after looking at the report, and we find none." Wakamoto, SDO at 4. As explained below, however, legal authority does require such a foundation.

First, the language of HRE Rule 612 provides in relevant part:

> If a witness uses a writing to refresh the witness'[s] memory for the purpose of testifying, either:
>
> (1) While testifying, or
>
> (2) Before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. . . . .

HRE Rule 612 sets out procedural requirements that must be followed when a writing is used to refresh a witness's testimony while testifying. At first blush, the rule does not seem to address whether a foundation must be laid that a witness's memory has been refreshed after reviewing the writing. However, a witness's memory is not necessarily refreshed after reviewing a writing, and the plain language of the rule indicates it governs a writing used to refresh a witness's memory. In other words, HRE Rule 612 is triggered only when a writing actually refreshes the witness's memory. Thus, the language of HRE Rule

16

612 alone requires that a foundation be laid that a witness's memory has been refreshed after reviewing a writing.

In Dibenedetto, the ICA provided further guidance on this issue.  That appeal arose out of a defendant's conviction by a jury for Driving Under the Influence of Intoxicating Liquor ("DUI") under HRS § 291-4, the law in effect at the time.  See Dibenedetto, 80 Hawai'i at 141, 906 P.2d at 627.  A police officer testified regarding the defendant's performance on a field sobriety test.  See id.  Based on the officer's responses, defense counsel argued that the officer was not testifying from his present recollection but off of the written police report, and moved to strike the officer's testimony.  See id.  The trial court denied the motion to strike, ruling that the matter was for the jury to determine, see 80 Hawai'i at 142, 906 P.2d at 628,  which was one of the issues on appeal addressed by the ICA, 80 Hawai'i at 144-45, 906 P.2d at 630-31.

After reviewing the officer's testimony, in which the officer indicated that his testimony was based on what he had recently read in his report, the ICA concluded that the officer did not have a "present recollection" of the field sobriety test at the time he testified, then addressed whether the trial court had erred in failing to strike the officer's testimony regarding the field sobriety test.  Dibenedetto, 80 Hawai'i at 144, 906 P.2d at 630.

The ICA then discussed HRE Rule 612, stating:

> [HRE] Rule 612 indicates that a witness may use a writing to refresh his memory for the purpose of testifying.  A writing, such as a police report, used to refresh a witness's memory is ordinarily not submitted into evidence. 3 J. Wigmore, Evidence in Trial at Common Law § 763, at 142 (Chadbourn rev. ed. 1970).  When used to refresh the witness's present recollection, a writing is solely employed to jog the memory of the testifying witness.  1 J. Strong, McCormick on Evidence § 9, at 29 (4th ed. 1992). Accordingly, when a writing is used to refresh a witness's recollection, the witness should testify from a memory thus revived, resulting in testimony from present recollection, not a memory of the writing itself.  Id.  A witness's recollection must be revived after he or she consults the particular writing or object offered as a stimulus so that the resulting testimony relates to a present recollection. 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 612[01], at 612-16 (1995).  If the writing fails to rekindle the witness's memory, the witness cannot be permitted to testify as to the contents of the writing unless the writing is otherwise admitted into evidence.  28 C. Wright & V. Gold, Federal Practice and Procedure: Evidence § 6183, at 463 (1993).

80 Hawai'i at 144, 906 P.2d at 630 (internal quotation marks, brackets, and ellipses omitted).

The ICA held that the question of whether the officer was properly allowed to testify about the field sobriety test was not a question of credibility for the jury to decide, as the State maintained, but one of admissibility for the judge to determine pursuant to HRE Rule 104(a), which mandates that preliminary questions concerning the admissibility of evidence be determined by the court.  See 80 Hawai'i at 144-45, 906 P.2d at 630-31.  The ICA further cited to HRE Rule 601, which provides that "[e]very person is competent to be a witness except as otherwise provided in the [HRE]."  Id.  The ICA then cited to HRE Rule 602, which provides in relevant part:

18

> **Rule 602  Lack of personal knowledge.** A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. . . .

The ICA further noted that the Commentary to HRE Rule 602 (1993) defines "personal knowledge" of a witness to "mean[] that the witness perceived the event about which [the witness] testifies and [the witness] has a present recollection of that perception." Commentary to HRE Rule 602 (citations omitted).

Based on its review of the officer's testimony, the ICA concluded that the requisite foundation of personal knowledge based on a presently refreshed memory had not been met and that under the "right/wrong" standard of review, the trial court had erred by not striking the officer's testimony regarding the field sobriety test. Dibenedetto, 80 Hawai'i at 145, 906 P.2d at 631.[5]

Thus, as indicated by the ICA and the authorities it cited in Dibenedetto, and as stated in the language of HRE Rule 612, testimony of a witness is admissible under that rule only when

---

[5] This court cited to Dibenedetto's analysis of HRE Rule 612 in State v. Espiritu, 117 Hawai'i 127, 137, 176 P.3d 885, 895 (2008). In Espiritu, the defendant alleged various mistakes in the admission of testimony under HRE Rule 612, including that, on one occasion, the prosecutor never asked if the complaining witness's memory had been refreshed after reviewing the police report. See Espiritu, 117 Hawai'i at 138, 176 P.3d at 896. This court ruled that, despite this omission, the witness's testimony "was nearly identical both before and after viewing the [police] report" and thus the evidence showed that the witness was not "merely reading from the report." 117 Hawai'i at 137, 176 P.3d at 895. In this case, however, the requisite foundation that Officer Kotobavalu was testifying from a refreshed memory after reviewing his report is not demonstrated by his testimony.

the writing has actually refreshed the witness's memory. A witness must testify based on personal knowledge, which by definition means the witness perceived an event and has a present recollection of that perception. See Commentary to HRE Rule 602. Therefore, after reviewing a writing while testifying, testimony of the witness laying a foundation that the witness's memory has actually been refreshed after reviewing the writing is required before the witness's testimony can be admitted under HRE Rule 612.

This conclusion is supported by HRE Rule 104(a), which provides in relevant part: "(a) Questions of admissibility generally. Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." 1 Kenneth S. Broun et al., McCormick on Evidence § 9 (7th ed. 2016) ("It is a preliminary question for [the trial judge] under Rule 104(a) whether the memorandum actually does refresh."). Actual refreshment of memory is a preliminary question concerning the admissibility of testimony under HRE Rule 612, which the court must determine prior to allowing the witness to testify pursuant to that rule. Thus, HRE Rule 104(a) also requires a showing that a witness's memory has been refreshed before testimony can be admitted under HRE Rule 612.

In addition, Professor Addison Bowman discusses HRE Rule 612 in his Hawaii Rules of Evidence Manual as follows:

20

> Refreshing a witness'[s] recollection at trial is an alternative to leading. . . .  When a witness experiences a memory lapse or omits to mention a detail expected by the proponent, the witness can be led or refreshed.  The material used to refresh can be anything that awakens a memory or prods a current awareness of a detail that should be included in the witness'[s] narrative.  See, e.g., State v. Keohokapu, 127 Hawai[']i 91, 276 P.3d 660 (2012) (police report that contained witness'[s] statements); State v. Espiritu, 117 Hawai[']i 127, 176 P.3d 885 (2008) (police report that recited contents of text messages the complaining witness received from the defendant).  Typically, the refreshing document will be a prior statement of the witness.
>
> Admissibility of the refreshing material is of no concern if the technique succeeds <u>because the witness will be instructed to read the document to herself and then will be asked if her memory is refreshed</u>.  See State v. Lam, 75 Haw. 195, 207 n.10, 857 P.2d 585, 592 n.10 (1993) (authentication of document unnecessary because it "merely serves to refresh the witness'[s] present memory and is not evidence").  <u>If she answers "Yes," then the examination will proceed in the usual fashion</u> . . . .  <u>If, on the other hand, the effort to refresh fails to stimulate an independent, present recollection in the witness, testimony that merely parrots the contents of the document will not be admitted over a rule 602 objection asserting lack of personal knowledge</u>.  State v. Espiritu, 117 Hawai[']i 127, 137, 176 P.3d 885, 895 (2008) (dictum).  For this proposition, Espiritu cited State v. Dibenedetto, 80 Hawai[']i 138, 906 P.2d 624 (App. 1995) (police officer had his report but no memory of a field sobriety test he had conducted); compare State v. Ferrer, 95 Hawai[']i 409, 431-33, 23 P.3d 744, 766-68 (App. 2001) (officer remembered administering Intoxilyzer test with result "over.08" although he needed refreshing about the accused's "exact score on the test"). . . .

Addison M. Bowman, Hawaii Rules of Evidence Manual, at 6-82 to 6-83 (2016-2017 ed.) (emphasis added).

Professor Imwinkelried's text, Evidentiary Foundations, is also in accord, indicating that "[t]he witness states that viewing the document . . . refreshes his or her memory" before the witness then testifies from revived memory.  Imwinkelried, supra, at 466.

21

As in Dibenedetto, a review of Officer Kotobalavu's testimony regarding Wakamoto's field sobriety test after the defense objection renders it unclear whether he was testifying from a present recollection of what he had perceived, or whether he was testifying from his memory of what he had read regarding his report. Proper foundation was not laid for his continued testimony regarding Wakamoto's field sobriety test that Officer Kotobalavu's recollection had been refreshed because the trial court did not require that he be asked whether his recollection had been refreshed after the defense raised the HRE Rule 612 objection.

Therefore, the district court erred by overruling the defense objection and by admitting Officer Kotobalavu's continued testimony without requiring a foundation that Officer Kotobalavu's memory had been refreshed after reviewing his report. The ICA also erred by affirming the district court and by indicating that no legal authority exists requiring such an evidentiary foundation.

**B.    The error was not harmless beyond a reasonable doubt**

The erroneous admission of evidence is not harmless beyond a reasonable doubt if there is a reasonable possibility that the error might have contributed to the conviction.  See State v. Subia, 139 Hawai'i at 69, 383 P.3d at 1207.  In this case, the district court specifically stated it partly relied on Officer Kotobalavu's testimony after his second review of his report (that because Wakamoto took an extra step, it followed that he turned the wrong way) as a basis for convicting Wakamoto of OVUII.  Therefore, despite the existence of additional evidence for the conviction, the evidentiary error cannot be deemed harmless beyond a reasonable doubt.

## V.    Conclusion

For the foregoing reasons, we vacate the ICA's November 22, 2017 Judgment on Appeal entered pursuant to its SDO, as well as the district court's Notice of Entry of Judgment and/or Order and Plea/Judgment, and we remand this case to the district court for further proceedings consistent with this opinion.

Earle A. Partington,
for petitioner

Justin P. Haspe, DPA
for respondent

/s/   Mark E. Recktenwald

/s/   Paula A. Nakayama

/s/   Sabrina S. McKenna

/s/   Richard W. Pollack

/s/   Michael D. Wilson